[Cite as *Smith v. Gray*, 2014-Ohio-4175.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

|  |  |  |
|---|---|---|
| MARK SMITH, et al., | : | |
| Plaintiffs-Appellants, | : | CASE NO. CA2013-11-011 |
| | : | O P I N I O N<br>9/22/2014 |
| - vs - | : | |
| | : | |
| GARY L. GRAY, et al., | : | |
| Defendants-Appellees. | : | |

CIVIL APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
Case No. 2011-1059

C. Nicholas Ring, 735 East State Street, Georgetown, Ohio 45121, for plaintiffs-appellants

Ravert J. Clark, The Citadel, 114 East 8th Street, Suite 400, Cincinnati, Ohio 45202, for defendant-appellee, Gary L. Gray

**S. POWELL, J.**

{¶ 1}  Plaintiffs-appellants, Mark and Brenda Smith, appeal from the decision of the Brown County Court of Common Pleas granting judgment following a bench trial in favor of defendant-appellee, Gary L. Gray, on their claim alleging a breach of contract.  For the reasons outlined below, we affirm.

{¶ 2}  On November 8, 2011, the Smiths filed a complaint against Gray alleging a breach of contract regarding the purported sale of a 2006 Dodge Ram 3500 pickup truck.

According to the Smiths' complaint, Mark purchased the truck from Gary on March 15, 2010 for $26,831.35 in cash.  However, when Gary was unable to produce a valid certificate of title for the vehicle within 60 days, Mark claims he returned the truck to Gary and asked for his money back.  Nevertheless, Gary did not return any of the purchase price to Mark, denying any transaction between he and Mark ever occurred.

{¶ 3}   The matter proceeded to a bench trial on September 20, 2013.  At trial, Mark testified he went to the office of T & G Tractors on March 15, 2010, a business owned and operated by Gary's son, Timmy Gray, to purchase the truck in cash.  At that time, Mark claims his wife Brenda, as well as Gary, Timmy, and Timmy's girlfriend, Danielle Dunn, were all in the office.  However, instead of handing the money to any specific person, Mark testified "[he] threwed the hundred dollar bills out on the desk" where Gary was sitting.  According to Mark, "I counted 'em out on the desk in front of him," but acknowledges that he never saw Gary, Timmy or Danielle take the money.  In fact, when specifically asked if he knew who took the money, Mark testified "No."

{¶ 4}   Continuing, Mark testified he picked up a receipt and the keys for the truck and drove home.  As Mark testified:

> I counted the money out on the table.  We were sittin' there talking.  The receipt was laying down beside the money.  I don't know whether Gary laid it down – all I know is I picked the receipt up, didn't even look at it, and I left, and drove the truck home.

It is undisputed that the receipt, which was admitted into evidence, contains the initials "GG." It is also undisputed that the receipt twice contains the name "Georgia Thompson," a person Mark testified he did not know.

{¶ 5}   Mark then testified that he purchased insurance for the vehicle, but never received a certificate of title.  Instead, Mark testified he received a telephone call from Timmy approximately "two-and-a-half months later, saying, 'We can't get a title for it.  We're gonna

- 2 -

send someone after it.'" Thereafter, when asked if his memory was "not a hundred percent" during cross-examination, Mark explicitly testified his memory was faulty and that he was "getting senile."

{¶ 6} The only other witness to testify at trial was Gary himself. Gary testified that the vehicle was owned by Danielle's grandmother, Georgia Thompson. Gary then testified that although Mark had informed Timmy and Danielle that he was interested in buying the truck, he never saw any purchase take place. As Gary testified:

> Q: Did you witness the purchase of the vehicle take place?
>
> A: No.
>
> Q: You didn't see Mark Smith bring money to the – to the T & G Tractors, on March 15, 2010?
>
> A: No.
>
> Q: Did you ever see him give any money, in regard to this truck?
>
> A: No.
>
> Q: Yet, he did take the truck from the property that day, did he not?
>
> A: Yes.

Gary further testified he had "no idea" how Mark got the keys to the vehicle.

{¶ 7} Continuing, Gary testified he did not provide Mark with the receipt for the truck and that it was not his handwriting on the receipt. Rather, Gary testified he believed Mark was "to pay the truck off to Chrysler," an apparent lien holder on the vehicle. Again, as Gary testified:

> Q: All right. Were you ever present when [Mark] was asked about whether he had or had not yet paid off the truck to Chrysler or refinanced it?
>
> A: Yes.
>
> * * *

Q: What did [Mark] – what was [Mark's] response, when he was asked about the financial status of the truck?

* * *

A: "It's on the agenda for tomorrow."

* * *

Q: Did you hear him say that, only one time?

A: No, at least, twice or three times.

Gary then testified the truck was later repossessed after Mark failed to make the necessary payments on the vehicle.

{¶ 8} After taking the matter under advisement, the trial court issued a decision on October 7, 2013 granting judgment in favor of Gary. In so holding, the trial court stated, "[t]he Court having listened to the testimony and reviewed exhibits of both Plaintiffs and Defendants finds that Plaintiffs failed to prove by a preponderance of the evidence their claims against Gary Gray." The Smiths now appeal from the trial court's decision, raising one assignment of error for review.

{¶ 9} THE TRIAL COURT ERRED BY THE JUDGE RULING AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 10} In their single assignment of error, the Smiths argue the trial court's decision ruling in Gary's favor on their claim alleging a breach of contract was against the manifest weight of the evidence. We disagree.

{¶ 11} As an appellate court, our review of a trial court's decision is limited to whether the judgment is against the manifest weight of the evidence. *Jones v. Holmes*, 12th Dist. Butler No. CA2012-07-133, 2013-Ohio-448, ¶ 24. The Ohio Supreme Court has confirmed that when reviewing the manifest weight of the evidence, an appellate court conducts the same analysis in both criminal and civil cases. *Eastley v. Volkman*, 132 Ohio St.3d 328,

2012-Ohio-2179, ¶ 12. As such, we weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the finder of fact "clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *Id.* at ¶ 20, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

**{¶ 12}** To prove a breach of contract claim, "a plaintiff must show 'the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff.'" *Discover Bank v. Poling*, 10th Dist. Franklin No. 04AP-1117, 2005-Ohio-1543, ¶ 17, quoting *Nilavar v. Osborn*, 137 Ohio App.3d 469, 483 (2d Dist.2000). Generally, in order for a valid contract to exist, there must be a "meeting of the minds" on the essential elements of the agreement, which is usually demonstrated by an offer, acceptance and consideration. *Estate Planning Legal Services, P.C. v. Cox*, 12th Dist. Butler Nos. CA2006-11-140 and CA2006-12-141, 2008-Ohio-2258, ¶ 32, citing *Noroski v. Fallet*, 2 Ohio St.3d 77, 79 (1982).

**{¶ 13}** In this case, after hearing testimony from both parties, the trial court determined the Smiths failed to prove that a contract ever existed between Mark and Gary for the purchase of the truck. Although Mark claimed he paid Gary for the vehicle and received a receipt from Gary following the purchase, the trial court clearly found this testimony was not credible. It is well-established that where the evidence presented to the trial court is susceptible to more than one interpretation, "we are bound to give it the construction that is consistent with the trial court's judgment and finding of facts." *Estate of Everhart v. Everhart*, 12th Dist. Fayette Nos. CA2013-07-019 and CA2013-09-026, 2014-Ohio-2476, ¶ 26.

**{¶ 14}** It is equally well-established that this court will not reverse a decision as against the manifest weight of the evidence simply because it holds a different opinion concerning the credibility of the witnesses and the evidence submitted before the trial court. *Artisan & Truckers Cas. Co. v. JMK Transp., L.L.C.*, 12th Dist. Clermont No. CA2013-01-004, 2013-

Ohio-3577, ¶ 25. This is particularly true here for "the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Mike Castrucci Ford Sales, Inc. v. Hoover*, 12th Dist. Clermont No. CA2007-02-022, 2008-Ohio-1358, ¶ 19, quoting *Seasons Coal Co., Inc. v. City of Cleveland*, 10 Ohio St.3d 77, 80 (1984). Therefore, after a thorough review of the record, because we cannot say the trial court erred and clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed, the Smiths' sole assignment of error is overruled.

{¶ 15} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.