[Cite as *Duke Energy Ohio, Inc. v. Hamilton*, 2021-Ohio-3778.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| DUKE ENERGY OHIO, INC., | : | |
| Appellant, | : | CASE NO. CA2021-03-023 |
| | : | O P I N I O N |
| - vs - | | 10/25/2021 |
| | : | |
| CITY OF HAMILTON, et.al., | : | |
| Appellees. | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2017-01-0163

Benesch Friedlander Coplan & Aronoff LLP, and Jerome W. Cook and Michael L. Snyder; James E. McLean, for appellant.

Millikin & Fitton Law Firm, and Heather Sanderson Lewis and Steven A. Tooman; Duncan & Allen LLP, and John P. Coyle, for appellee, City of Hamilton.

Schroder Maundrell Barbiere & Powers, Lawrence Barbiere and Jay D. Patton, for appellees, Fairfield Township and Fairfield Township Board of Township Trustees.

**S. POWELL, J.**

{¶ 1} Appellant, Duke Energy Ohio, Inc. ("Duke Energy"), appeals the decision of the Butler County Court of Common Pleas granting a judgment in favor of appellees, the city of Hamilton, Fairfield Township, and the Board of Trustees of Fairfield Township, following a bench trial on Duke Energy's cause of action alleging violations of Article XVIII, Sections 4 and 6 of the Ohio Constitution. For the reasons outlined below, we affirm the trial court's decision.

**Article XVIII, Sections 4 and 6 of the Ohio Constitution**

{¶ 2}   To understand this case, it is necessary to first set forth the law upon which this case is based: Article XVIII, Sections 4 and 6 of the Ohio Constitution.

{¶ 3}   "Section 4, Article XVIII of the Ohio Constitution empowers any municipality to acquire, construct, own, lease, and operate any public utility within or without its corporate limits to serve the municipality and its inhabitants." *Bakies v. Perrysburg*, 108 Ohio St.3d 361, 2006-Ohio-1190, ¶ 30.  Article XVIII, Section 6 of the Ohio Constitution "authorizes a municipality to establish, maintain and operate a power plant to produce electricity and to contract with others to purchase electricity to be supplied to its inhabitants." *Cleveland Elec. Illuminating Co. v. Cleveland*, 8th Dist. Cuyahoga No. 108560, 2020-Ohio-33, ¶ 25. "Section 6, Article XVIII further authorizes a municipality owning or operating a public utility to sell and deliver surplus utility product to others." *Bakies* at ¶ 30.  This authorization is limited, however, to the sale and delivery of "surplus utility product" not exceeding "fifty per cent of the total service or product supplied by such utility within the municipality," except for "the sale of water or sewage services."  Ohio Constitution, Article XVIII, Section 6.  The term "surplus" means "'the amount that remains when use or need is satisfied.'"  *Toledo Edison Co. v. Bryan*, 90 Ohio St.3d 288, 292 (Nov. 15, 2000), quoting Webster's Third New International Dictionary 2301 (1993).

{¶ 4}   When read together, Article XVIII, Sections 4 and 6 of the Ohio Constitution allow "a municipality to purchase electricity primarily for the purpose of supplying its residents" and to sell and deliver "surplus electricity from that purchase to entities outside the municipality."  *Id.*  "This interpretation necessarily precludes a municipality from purchasing electricity solely for the purpose of reselling the entire amount of the purchased electricity to an entity outside the municipality's geographic limits."  *Id.*  Therefore, based on the Ohio Supreme Court's interpretation of Article XVIII, Sections 4 and 6 of the Ohio

Constitution as set forth in in *Toledo Edison*, "a municipality violates the Ohio Constitution if it purposely purchases more electricity than it needs for its inhabitants 'solely' so that it can resell electricity to customers outside its municipal boundaries," thereby creating an "artificial surplus" of energy for resale outside of its municipal limits. *Cleveland Elec.*, 2020-Ohio-33 at ¶ 35.

{¶ 5} But that does not mean a municipality is "required to procure the exact amount of electricity needed by its inhabitants – and only the exact amount of electricity needed by its inhabitants – at any given time." *Id.* at ¶ 36. Rather, "a municipality may acquire a surplus of electricity for reasons other than 'solely for the purpose of reselling' surplus electricity outside its municipal boundaries and, if it does so, the municipality may then resell the surplus to others outside its municipal boundaries subject to the 50 percent limitation." *Id.* Therefore, whether a municipality violated Article XVIII, Sections 4 and 6 of the Ohio Constitution by reselling electricity to any entity outside of its municipal limits "hinges on the purpose for which the electricity was purchased, i.e., whether it was purchased 'solely for the purpose of reselling it to an entity that is not within the municipality's geographic limits,' or whether it was purchased in whole or in part for some other purpose." *Id.*[1]

**The Parties**

{¶ 6} Duke Energy is a public-utility corporation regulated by the Public Utilities Commission of Ohio that supplies natural gas and electric utility services throughout southwestern Ohio. The city of Hamilton ("the City") is an Ohio municipal corporation located in Butler County, Ohio. The City operates a municipal utility that provides natural gas and electric services both inside and outside of its municipal limits. Fairfield Township

---

1. We note that the Ohio Supreme Court has accepted the Eighth District's decision in *Cleveland Elec.* for review under Case No. 2020-0277. Of the issues accepted for review is whether "[a] municipal utility violates Article XVIII, Sections 4 and 6 if it buys any amount of electricity for a purpose other than supplying that electricity to itself or its inhabitants, then sells the resulting excess to customers outside city limits." Oral arguments on *Cleveland Elec.* were held before the Ohio Supreme Court on April 27, 2021.

("the Township") is a limited home rule township that is also located in Butler County, Ohio. The Township's legislative authority is the Board of Trustees of Fairfield Township. For many decades preceding the facts giving rise to this case, Duke Energy, along with its predecessors, was the exclusive provider of natural gas and electric service to entities located within the Township.

**Facts and Procedural History**

{¶ 7} On August 7, 1996, the City and the Township entered into a contract that established the Hamilton-Indian Springs Joint Economic Development District ("JEDD"). The purpose of the JEDD was to facilitate commercial and economic development within the City and the Township. Under the terms of the JEDD, the City agreed to supply limited utility service for sewerage within the JEDD designated area.

{¶ 8} On April 21, 2017, over two decades after the JEDD first came into effect, the City entered into an agreement with the Township that amended the JEDD to include additional acreage of undeveloped land located within the Township ("Added Area"). There is no dispute that Section 7(b) of the amended JEDD provides that the City "shall have the right to provide electric and natural gas service to the Added Area pursuant to the owner and [the City]." There is also no dispute that the City did not provide utility service to any entities located within the Added Area until sometime in 2019 and that, in January of 2020, the City was providing retail electric service to just two entities located within the Added Area: a senior living community and a Township fire station.

{¶ 9} On January 24, 2017, prior to the creation of the Added Area, Duke Energy filed a complaint based on a November 2016 letter of intent to create the Added Area seeking a declaratory judgment finding the City could not provide natural gas or electric service to any entities located within the Added Area. Duke Energy also sought a permanent injunction preventing the City from providing natural gas and electric service to

any entities located within the Added Area. Shortly thereafter, on March 22, 2017, Duke Energy filed an amended complaint that set forth two causes of action in support of its request for a declaratory judgment and permanent injunction, only one of which is relevant here.[2] That being, Duke Energy's cause of action alleging the newly amended JEDD allowed the City to exceed the authorization granted to it by Article XVIII, Sections 4 and 6 of the Ohio Constitution by circumventing "the legal limitations to its home rule authority," thus permitting the City to supply "unlimited natural gas and electric service" outside of its "municipal territory."

{¶ 10} Duke Energy set forth two separate claims in support of this single cause of action: (1) a claim alleging the City had created an "artificial surplus" of energy for the sole purpose of selling that artificial energy surplus to entities located outside of its municipal limits in violation of Article XVIII, Section 4 and 6 of the Ohio Constitution (hereinafter, Duke Energy's "artificial surplus" claim); and (2) a claim alleging the City had sold "surplus" energy to entities outside of its municipal limits in violation of the "fifty per cent limitation" set forth in Article XVIII, Section 6 of the Ohio Constitution (hereinafter, Duke Energy's "fifty per cent limitation" claim).

{¶ 11} On January 13 thru 16, 2020, a three-day bench trial was held on the matter. To support its "artificial surplus" and "fifty per cent limitation" claims, Duke Energy called three witnesses, all of whom were called as adverse witnesses as if on cross-examination pursuant to Evid.R. 611(C). These three witnesses were (1) Nathan Perry, the City's utility business manager; (2) James Logan, the City's executive director of infrastructure; and (3)

---

2. In the first of its two causes of action, Duke Energy argued that it had the exclusive right to provide electric service and natural gas service to the Added Area. Following discovery, the City moved to dismiss this claim pursuant to Civ.R. 12(H)(3) arguing this was a claim that was subject to the exclusive jurisdiction of the Public Utilities Commission of Ohio. The trial court agreed and granted the City's motion to dismiss this claim, a decision this court subsequently affirmed on appeal in *Duke Energy Ohio, Inc. v. Hamilton*, 12th Dist. Butler No. CA2018-01-001, 2018-Ohio-2821.

Daniel Moats, the City's director of utility operation. Duke Energy's questioning of these witnesses was generally based on its compilation and interpretation of the evidence presented, as well as its own calculations gleaned from that evidence, that Duke Energy believed proved its "artificial surplus" and "fifty per cent limitation" claims. Defending against Duke Energy's claims, and to refute Duke Energy's assertions, the City called these same three witnesses, Perry, Logan, and Moats, as well as two additional witnesses, John T. Courtney and John W. Bentine, both of whom were classified as expert witnesses given their extensive knowledge and experience in the electric utility industry.

{¶ 12} As part of this testimony, Perry, who oversees the financial reporting for the City's utility operations, energy management, and power supply planning functions, testified about the weather conditions in 2017 and how those weather conditions impacted the City's supply of energy and the amount of energy supplied by the City to both itself and to its inhabitants. As Perry testified, such testimony was "a product of analysis" that was based on "weather data that is readily obtainable data * * * from multiple different sources."

{¶ 13} Perry also testified that he did not agree that Duke Energy's calculations "accurately reflect the surplus that the City has," nor were Duke Energy's calculations "being calculated in a way that would be industry standard" so as to support Duke Energy's "artificial surplus" and "fifty per cent limitation" claims. This was in addition to Perry's testimony that an exhibit Duke Energy had extensively relied upon to support its claims, Plaintiff's Exhibit 17, had a typo that made Duke Energy's claims and supporting calculations regarding Duke Energy's electric energy usage incorrect.

{¶ 14} Specifically, as Perry testified when asked about this exhibit by Duke Energy, "[t]hat's not – it is a typo. This table is just the sales to customers. It doesn't include losses and free service and those additional items that was shown in that sentence that you –," to which Duke Energy responded, "Well, wait a second. This document doesn't say anything

about that." This is in addition to Perry testifying in response to a number of Duke Energy's other questions with answers such as "It just doesn't work that way;" "this seems out of context," and "those aren't two apples-to-apples numbers." Perry further testified that Duke Energy's calculations were "inadequately representing our surplus position." This is in addition to Perry testifying, in pertinent part, as follows:

> The sales numbers represented in the 2018 official statement, as we noted earlier, those do not include losses. I know that the footnotes said that losses and station services, sales for resale, free services were included in those, but I've reviewed those and those are not included in those numbers. I think it's very important when we're comparing our generation supply to our consumption that we include losses as well as free services when we're comparing those two numbers. Also, there's some information in these exhibits related to 2018 on the generation side that I have not been able to verify. And, also, I believe that our – with respect to our supply and our consumption, these calculations that are being done here do not reflect variations and weather that can affect both our generation and our sales to customers.

{¶ 15} Perry also testified in response to Duke Energy's questioning regarding the City's total energy consumption for the year 2017:

> Q: Mr. Perry, do you have a point of view as to whether these four numbers, when added up, represent the total amount of energy consumed within the municipality by either the City or its inhabitants for 2017?
>
> A: It does not.
>
> Q: It does not? Okay. And you also believe that the number in Plaintiff's Exhibit 17 for the year 2017, annual usage, that being the 522, 949, 132 kilowatt-hours, also does not reflect the total system usage, correct?
>
> A: It does not.

{¶ 16} Perry further testified in response to Duke Energy's questioning regarding its Exhibit 54, an exhibit wherein Duke Energy set forth a summation of the City's alleged electric utility usage for the years 2012 through 2017: "[t]hey're the same numbers.

However, they have an incorrect footnote, saying that they include total system usage, sales for resales, losses, station services, and energy furnished without charge." Additionally, when asked whether the energy that is being supplied outside of the City's municipal boundaries was "excess," in other words, "what is left over after all the needs of the City and its inhabitants are met," Perry testified, "I don't agree with that."

{¶ 17} At the close of Duke Energy's case-in-chief, the trial court dismissed Duke Energy's claim related to the City's alleged illegal sale and distribution of natural gas on the basis that Duke Energy failed to present any testimony or evidence on that issue. Pursuant to Civ.R. 41(B)(2), the trial court also dismissed Duke Energy's "artificial surplus" claim, wherein Duke Energy alleged the City had created an "artificial surplus" of energy for the sole purpose of selling that energy surplus to entities located outside of its municipal limits in violation of Article XVIII, Section 4 and 6 of the Ohio Constitution. Although originally taking the matter under advisement, the trial court subsequently explained its decision to dismiss Duke Energy's "artificial surplus" claim as follows:

> While there is no question that the City has a surplus of energy for the years presented at trial the Court was not convinced that any such surplus was an artificial one. Based upon the evidence presented the Court finds the City was attempting to manage a mismatch between reasonably conducted long-term procurement and unanticipated developments that defeated forecasts on which that procurement was based. Finding that the surplus was not artificial, there is no injunctive relief and the Court will not order to divest its generation resources.

{¶ 18} Due to its decision dismissing Duke Energy's "artificial surplus" claim, the only remaining issue left for the trial court to determine at the conclusion of trial was Duke Energy's second claim alleging the City had violated the "fifty per cent limitation" set forth in Article XVIII, Section 6 of the Ohio Constitution. Because Duke Energy was the plaintiff in this case, to be successful on its "fifty per cent limitation" claim, Duke Energy was required to prove, by a preponderance of the evidence, that the City had sold its "surplus" energy to

entities outside of its municipal limits in violation of the "fifty per cent limitation" set forth in Article XVIII, Section 6 of the Ohio Constitution at a time when the City had entered into the agreement with the Township to amend the JEDD to include the Added Area.

{¶ 19} On January 15, 2021, approximately one year after the bench trial concluded, the trial court issued a decision finding Duke Energy had "failed to sustain its burden of proving by a preponderance of the evidence its claim that the City was operating outside of the authorization granted by Article XVIII Section 6 of the Constitution in 2017 when it entered into the * * * JEDD Amendment."  In so holding, the trial court initially noted that Duke Energy's "fifty per cent limitation" claim was based on the test set forth by the Ohio Supreme Court in *State ex rel. Wilson v. Hance*, 169 Ohio St. 457 (1959), which provides:

> The proper test to be applied in determining whether or not a municipality is conducting its electric utility business in accordance with Art. XVIII, Sec. 6 of the Ohio Constitution is by comparison of the number of kilowatt hours supplied outside the city within a given period of time, such as a month, with the number of kilowatt hours of electricity supplied within the municipality during the same period of time.  If the number of kilowatt hours supplied to noninhabitants is in excess of 50 per cent of the number of kilowatt hours supplied within the municipality, the municipality is violating Art. XVIII, Sec. 6 of the Ohio Constitution.

*Id*. at 461-462.

{¶ 20} After setting forth the *Hance* test, the trial court then noted Duke Energy's belief that its "fifty per cent limitation" claim was "black and white" and merely required the trial court to accept the "numbers" that it had presented at trial and compare the number of kilowatt hours it claimed the City had supplied outside of its municipal limits "within a given time period" with the number of kilowatt hours it alleged the City had supplied within its municipal limits over that same time period "without taking into consideration any other factors."  This, as the trial court noted, was contrary to the City's belief that standard industry practice required "other factors" and "considerations" be considered when evaluating

- 9 -

whether Duke Energy's "fifty per cent limitation" claim had merit. According to the City, this included the consideration of "electrical losses," a term the trial court defined to mean "the electric energy dissipated as heat in the process of transmission, transformation, and distribution of electric energy," as well as "weather normalization," which the trial court explained "takes into consideration rainfall and temperature when determining constitutional compliance."

{¶ 21} Based on the testimony and evidence presented at trial, the trial court agreed with the City's argument that Duke Energy's "fifty per cent limitation" claim required the inclusion of "other factors and considerations," such as "electrical losses," when applying the *Hance* test to the case at bar to determine whether the City had violated the "fifty per cent limitation" set forth in Article XVIII, Section 6 of the Ohio Constitution. The trial court explained that it had reached this decision given the fact that "[e]ach witness called at trial testified that [electrical] losses are properly treated as part of the electric energy supplied by a municipal utility to its municipality and the inhabitants of that municipality." This includes Perry who, as part of his testimony, testified that "electrical losses" should account for "approximately" five percent.

{¶ 22} The trial court also agreed with the City's argument that "weather normalization" should be considered in applying the *Hance* test to the case at bar. As the trial court explained, this is because Duke Energy "chose not to enlist the services of an expert witness in regard to its claims and instead relied on cross-examination of the City's witnesses in its attempt to show that the City was in violation of the constitutional limitations." Therefore, because Duke Energy attempted to prove its case by cross-examining the City's witnesses, none of whom testified that Duke Energy's argument and interpretation of the evidence was correct, the City's argument "that weather normalization should be included in making the *Hance* calculation" was not "sufficiently countered."

{¶ 23} After determining that "electrical losses" and "weather normalization" should be included if it was to apply the *Hance* test to the case at bar, the trial court also noted that the *Hance* test required the trial court to determine the "given time period" to be used. Considering the record, as well as the parties' arguments presented at trial, the trial court determined that a three-year average was an appropriate "given time period" as opposed to a month or even a single year. As the trial court explained, this is because, "[u]sing a shorter period (i.e., a month) would create a risk that a municipality could be subjected to unreasonable restrictions due to anomalous weather conditions." The trial court's decision was in line with the testimony offered by one of the City's two expert witnesses, Courtney, who testified that a three year average should be used, rather than any one particular year, "so the effect of that is to kind of normalize any abnormalties (sic) so to speak, within that three-year period."

{¶ 24} The trial court then set out its holding that by not accounting for "electrical losses" and "weather normalization" when making its calculations under the *Hance* test, Duke Energy failed to satisfy its burden of proof requiring it to establish, by a preponderance of the evidence, that the City was operating outside the authority granted to it by Article XVIII, Section 6 of the Ohio Constitution at the time when the City entered into an agreement with the Township to amend the JEDD to include the Added Area. That is to say, the trial court found Duke Energy had failed to produce evidence or elicit testimony as part of its case-in-chief as to the hard numbers needed to apply the *Hance* test when determining whether a violation of Article XVIII, Section 6 of the Ohio Constitution had occurred. In so holding, the trial court reiterated the fact that Duke Energy had chosen "not to enlist the services of an expert witness in regard to its claims and instead relied on cross-examination of the City's witnesses" in order to satisfy its burden of proof, a choice that, given the trial court's verdict, ultimately proved fatal to both Duke Energy's "artificial surplus" and "fifty per

cent limitation" claims.

{¶ 25} On January 21, 2021, Duke Energy moved the trial court for findings of fact and conclusions of law in accordance with Civ.R. 52. In response to Duke Energy's motion, the trial court issued another decision on February 2, 2021 setting forth under specific headings entitled "**<u>FINDINGS OF FACT</u>**" and "**<u>CONCLUSIONS OF LAW</u>**" its findings and conclusions that led to its decision finding Duke Energy had failed to satisfy its burden of proof. (Capitalized, bold, and underlined text sic.) Not satisfied with the trial court's response, Duke Energy moved the trial court for additional findings of fact and conclusions of law. This included Duke Energy requesting the trial court set forth the specific numbers and percentages the trial court had used in applying the *Hance* test to the case at bar. Duke Energy filed this supplemental motion on February 8, 2021.

{¶ 26} On May 5, 2021, the trial court denied Duke Energy's supplemental motion for additional findings of fact and conclusions of law. In so holding, the trial court noted that it, i.e., the trial court, "needed to consider 'electrical loss'" in order for it to properly apply the *Hance* test to the case at bar, but that Duke Energy had not provided the trial court "with enough information to properly conduct the *Hance* test." Explaining why that was, the trial court noted that it was Duke Energy's burden to prove, by a preponderance of the evidence, that the City was violating Article XVIII, Section 6 of the Ohio Constitution in order to prove its "fifty per cent limitation" claim. Duke Energy, however, "failed to meet its burden" through the cross-examination of the three witnesses it had called to testify at trial, Perry, Logan, and Moats, given their testimony that Duke Energy's interpretation of the evidence presented at trial was incorrect.[3]

---

3. We note that Duke Energy claims in its appellate brief that "[m]ost of the actual data was admitted by stipulation or without objection" and that the "numbers" it provided to the trial court were not "materially disputed." However, while we may agree that the actual data and numbers used by Duke Energy to support its calculations were not disputed, it is clear that Duke Energy's compilation and interpretation of that data, as well as what that data represented, certainly was.

{¶ 27} Duke Energy now appeals, raising three assignments of error for review. For ease of discussion, we will address Duke Energy's three assignments of error out of order. And, because Duke Energy's first and second assignments of error are identically worded, we will address Duke Energy's first and second assignments of error together.

**Duke Energy's Assignment of Error No. 3:**

{¶ 28} In its third assignment of error, Duke Energy argues the trial court's February 2, 2021 decision is not a final and appealable order because the trial court failed to provide sufficient findings of fact and conclusions of law in accordance with Civ.R. 52, thereby preventing this court from conducting a meaningful review of the trial court's decision on appeal. We disagree.

{¶ 29} Following a bench trial, "a trial court has a mandatory duty under Civ.R. 52 to issue findings of fact and conclusions of law when a party makes a timely request." *In re Z.N.T.*, 12th Dist. Clermont No. CA2018-05-035, 2019-Ohio-915, ¶ 14. That is to say, "when questions of fact are tried to a court without the intervention of a jury, the trial court has a mandatory duty under Civ.R. 52 to issue findings of fact and conclusions of law" upon a timely request being made. *In re Estate of Hoppes*, 12th Dist. Fayette No. CA2014-04-007, 2014-Ohio-5749, ¶ 24. "The purpose of [Civ.R. 52] is therefore clear: to aid the appellate court in reviewing the record and determining the validity of the basis of the trial court's judgment." *Werden v. Crawford*, 70 Ohio St.2d 122, 124 (1982). "A trial court may substantially comply with the requirements of Civ.R. 52 if its judgment entry adequately explains the basis for its decision." *D'Amico v. Worley Auto Sales, Inc.*, 12th Dist. Butler No. CA2009-02-066, 2009-Ohio-6742, ¶ 20. Therefore, "[i]f the court's opinion, together with other parts of the trial court's record, provides an adequate basis upon which a reviewing court can decide the legal issues presented, there is substantial compliance with Civ.R. 52." *Hamilton Brownfields Redevelopment, LLC v. Duro Tire & Wheel*, 156 Ohio

App.3d 525, 2004-Ohio-1365, ¶ 12, citing *Domestic Linen Supply & Laundry Co. v. Kenwood Dealer Group, Inc.*, 109 Ohio App.3d 312, 328 (12th Dist.1996).

{¶ 30} Despite Duke Energy's claims, the trial court's findings of fact and conclusions of law set forth within its February 2, 2021 decision are sufficient for this court to determine whether the trial court committed reversible error in rendering its decision on Duke Energy's "artificial surplus" and "fifty per cent limitation" claims. In other words, the trial court's February 2, 2021 decision provides sufficient findings of fact and conclusions of law for this court to review the trial court's decision finding Duke Energy failed to satisfy its burden of proof requiring it to establish, by a preponderance of the evidence, that the City violated Article XVIII, Sections 4 and 6 of the Ohio Constitution at the time when the City entered into an agreement with the Township to amend the JEDD to include the Added Area.[4] Therefore, because the trial court's February 2, 2021 decision, together with other parts of the record, provides an adequate basis upon which this court can decide the issues presented herein, we find the trial court, at worst, substantially complied with the requirements of Civ.R. 52. *See, e.g., Domestic Linen Supply & Laundry v. Kenwood Dealer Group,* 109 Ohio App.3d 312, 328 (12th Dist.1996) (trial court substantially complied with Civ.R. 52 where a review of the record and the trial court's written decision provided "this court with an adequate basis upon which to decide the assignments of error presented"). Accordingly, for the reasons outlined above, Duke Energy's third assignment of error lacks merit and is overruled.

**Duke Energy's Assignments of Error Nos. 1 and 2:**

---

4. We note that Duke Energy claims it is "unfamiliar" with of the burden of proof the trial court imposed in this case, i.e., a preponderance of the evidence. We find this to be highly unlikely and bordering on the absurd given the nearly universally accepted precept that, "'[i]n a civil case, the party with the burden of persuasion is to persuade the trier of fact by a preponderance of the evidence, or upon some issues, by clear and convincing evidence.'" *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 163 Ohio St.3d 337, 2020-Ohio-5371, ¶ 22, quoting *State v. Robinson*, 47 Ohio St.2d 103, 107 (1976).

{¶ 31} In its first and second assignments of error, Duke Energy argues the trial court's decision dismissing its "artificial surplus" claim pursuant to Civ.R. 41(B)(2) was against the manifest weight of the evidence. Duke Energy also argues the trial court's decision ruling against it on its "fifty per cent limitation" claim at the conclusion of trial was against the manifest weight of the evidence. We disagree with both of Duke Energy's claims.

*Manifest Weight of the Evidence Standard of Review*

{¶ 32} "The standard of review for a manifest weight challenge in a civil case is the same as that applied to a criminal case." *Skyward Learning Servs., Inc. v. Gray*, 12th Dist. Butler No. CA2019-08-140, 2020-Ohio-1182, ¶ 10; *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 17. When considering a challenge to the manifest weight of the evidence, this court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created a manifest miscarriage of justice warranting reversal and a new trial ordered. *Hacker v. House*, 12th Dist. Butler No. CA2014-11-230, 2015-Ohio-4741, ¶ 21, citing *Eastley* at ¶ 20; *Carson v. Duff*, 12th Dist. Fayette Nos. CA2017-03-005 and CA2017-03-007, 2017-Ohio-8199, ¶ 11.

{¶ 33} A judgment will not be reversed as being against the manifest weight of the evidence where the judgment is supported by some competent, credible evidence going to all essential elements of the case. *Sterling Constr., Inc. v. Alkire*, 12th Dist. Madison No. CA2016-12-032, 2017-Ohio-7213, ¶ 8; *Ashburn v. Roth*, 12th Dist. Butler Nos. CA2006-03-054 and CA2006-03-070, 2007-Ohio-2995, ¶ 26. "'This power is to be invoked only in extraordinary circumstances where the evidence presented at trial weighs heavily in favor of the appellant.'" *Investor Support Servs., L.L.C. v. Dawoud*, 12th Dist. Warren No. CA2020-09-060, 2021-Ohio-2293, ¶ 23, quoting *McCartney v. Universal Electric Power*

*Corp.*, 9th Dist. Summit No. 21643, 2004-Ohio-959, ¶ 13, citing *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). This means that, when reviewing a bench trial, "an appellate court will uphold the trial court's decision unless it appears the record cannot support a reasonable person in concluding as the trial judge did." *Bales v. Miami Univ.*, 12th Dist. Butler No. 2006-11-295, 2007-Ohio-6032, ¶ 16.

*Duke Energy's "Artificial Surplus" Claim*

{¶ 34} Duke Energy initially argues the trial court erred by dismissing its "artificial surplus" claim pursuant to Civ.R. 41(B)(2), wherein Duke Energy alleged the City had created an "artificial surplus" of energy for the sole purpose of selling that energy surplus to entities located outside of its municipal limits in violation of Article XVIII, Sections 4 and 6 of the Ohio Constitution. We find no merit to Duke Energy's claim.

{¶ 35} There is no dispute that Duke Energy's "artificial surplus" claim is based on the Ohio Supreme Court's interpretation of Article XVIII, Sections 4 and 6 of the Ohio Constitution as set forth in *Toledo Edison*. That being, a prohibition against a municipality "purchasing electricity solely for the purpose of reselling the entire amount of the purchased electricity to an entity outside the municipality's geographic limits." *Toledo Edison.*, 90 Ohio St.3d at 292. Or, as stated by the Eighth District Court of Appeals, "[i]t is only where a municipality purchases more electricity than it needs for its inhabitants '*solely* for the purpose of reselling it to an entity that is not within the municipality's geographic limits,'" that the municipality is in violation of Article XVIII, Sections 4 and 6 of the Ohio Constitution as interpreted by the Ohio Supreme Court in *Toledo Edison*. *Cleveland Elec.*, 2020-Ohio-33 at ¶ 35.

{¶ 36} As noted above, the trial court dismissed Duke Energy's "artificial surplus" claim in accordance with Civ.R. 41(B)(2). Pursuant to that rule, "[i]If the court finds that the plaintiff failed to meet its burden of proof, then the trial court may enter judgment in the

defendant's favor." *Burdick v. Burd Brothers, Inc.*, 12th Dist. Clermont No. CA2018-07-054, 2019-Ohio-1593, ¶ 15, citing *Ohio Valley Associated Bldrs. & Contrs. v. Rapier Elec., Inc.*, 12th Dist. Butler Nos. CA2013-07-110 and CA2013-07-121, 2014-Ohio-1477, ¶ 23. "A trial court's ruling on a Civ.R. 41(B)(2) motion may not be disturbed on appeal unless such judgment is erroneous as a matter of law or against the manifest weight of the evidence." *Ohio Dept. of Agriculture v. Brown*, 12th Dist. Clermont No. CA2019-11-085, 2020-Ohio-3316, ¶ 11, citing *Ohio Valley Associated Bldrs. & Contrs.*

{¶ 37} Duke Energy claims the trial court's decision dismissing its "artificial surplus" claim was premature, contrary to law, and against the manifest weight of the evidence since it "presented the only evidence reflecting the true amount of surplus produced by [the City's] utility operations," thereby demonstrating a clear violation of Article XVIII, Sections 4 and 6 of the Ohio Constitution. However, based on the evidence Duke Energy presented at trial, the trial court clearly found no merit to Duke Energy's assertions that the City had acted illegally by creating an "artificial surplus" of energy for the sole purpose of selling that energy surplus to entities located outside of its municipal limits.

{¶ 38} The trial court instead found that while the City did have a surplus of energy, the City's surplus was not an "artificial surplus" in violation of the law, i.e., a purchase of electricity by the City "solely for the purpose" of reselling it outside of its municipal limits. As the trial court explained, this was because the City's energy surplus came about as a result of the City "attempting to manage a mismatch between reasonably conducted long-term procurement and unanticipated developments that defeated forecasts on which that procurement was based." This includes such things as the reduction in the market price of electric energy during the Great Recession of 2008, the emergence of natural gas as a new source of fuel for electric generation, and the significant impact that weather and temperature variations can have on the supply and demand of electric energy.

{¶ 39} We find no error with the trial court's decision dismissing Duke Energy's "artificial surplus" claim in accordance with Civ.R. 41(B)(2). We, in fact, agree with the trial court's decision finding Duke Energy failed to satisfy its burden of proof requiring it to prove, by a preponderance of the evidence, that the City had purchased more electricity than it needed for its inhabitants "solely for the purpose" of reselling that surplus energy to any entity located outside of its municipal limits. Rather, just as the trial court found, and for which the record fully supports, the City's energy surplus came about as a result of the City "attempting to manage a mismatch between reasonably conducted long-term procurement and unanticipated developments that defeated forecasts on which that procurement was based." Therefore, because we find no error in the trial court's decision dismissing Duke Energy's "artificial surplus" claim pursuant to Civ.R. 41(B)(2), Duke Energy's first argument lacks merit.

*Duke Energy's "Fifty Per Cent Limitation" Claim*

{¶ 40} Duke Energy next argues the trial court erred by ruling against it on its "fifty per cent limitation" claim at the conclusion of trial, wherein Duke Energy alleged the City had sold surplus energy to noninhabitants exceeding the "fifty per cent limitation" set forth in Article XVIII, Section 6 of the Ohio Constitution. We again find no merit to Duke Energy's claim.

{¶ 41} Just like there was no dispute that the Ohio Supreme Court's decision in *Toledo Edison* applied to Duke Energy's "artificial surplus" claim, there is also no dispute that Duke Energy's "fifty per cent limitation" claim is based on the test set forth by the Ohio Supreme Court in *Hance*, which provides:

> The proper test to be applied in determining whether or not a municipality is conducting its electric utility business in accordance with Art. XVIII, Sec. 6 of the Ohio Constitution is by comparison of the number of kilowatt hours supplied outside the city within a given period of time, such as a month, with the

- 18 -

number of kilowatt hours of electricity supplied within the municipality during the same period of time. If the number of kilowatt hours supplied to noninhabitants is in excess of 50 per cent of the number of kilowatt hours supplied within the municipality, the municipality is violating Art. XVIII, Sec. 6 of the Ohio Constitution.

*Id.*, 169 Ohio St. at 461-462.

### "Only Evidence Reflecting True Amount of Surplus"

{¶ 42} To support its argument alleging the trial court erred by ruling against it on its "fifty per cent limitation" claim, Duke Energy initially argues that it "presented the only evidence reflecting the true amount of surplus produced" by the City, thereby proving the City had violated the "fifty per cent limitation" set forth in Article XVIII, Section 6 of the Ohio Constitution. The trial court, however, found that by not accounting for "electrical losses" and "weather normalization" when making its calculations, Duke Energy failed to satisfy its burden of proof requiring it to establish, by a preponderance of the evidence, that the City was operating outside the authority granted to it by Article XVIII, Section 6 of the Ohio at the time when the City entered into an agreement with the Township to amend the JEDD to include the Added Area. Or, stated differently, by not accounting for "electrical losses" and "weather normalization" when making its calculations, the trial court found Duke Energy's interpretation of the evidence lacked merit in that such interpretation was not supported by any competent and credible evidence presented at trial.

{¶ 43} "It is well-established that where the evidence presented to the trial court is susceptible to more than one interpretation," such as the case here, "'we are bound to give it the construction that is consistent with the trial court's judgment and finding of facts.'" *Smith v. Gray*, 12th Dist. Brown No. CA2013-11-011, 2014-Ohio-4175, ¶ 13, quoting *Estate of Everhart v. Everhart*, 12th Dist. Fayette Nos. CA2013-07-019 and CA2013-09-026, 2014-Ohio-2476, ¶ 26. "It is equally well-established that this court will not reverse a decision as

against the manifest weight of the evidence simply because it holds a different opinion concerning the credibility of the witnesses and the evidence submitted before the trial court." *Id.*, citing *Artisan & Truckers Cas. Co. v. JMK Transp., L.L.C.,* 12th Dist. Clermont No. CA2013-01-004, 2013-Ohio-3577, ¶ 25. This is particularly true in cases such as this for "'the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Mike Castrucci Ford Sales, Inc. v. Hoover*, 12th Dist. Clermont No. CA2007-02-022, 2008-Ohio-1358, ¶ 19, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 44} In this case, the trial court was provided with two interpretations of the evidence presented at trial: one from Duke Energy claiming its interpretation of the evidence proved the City was in violation of Article XVIII, Section 6 of the Ohio Constitution, and one from the City claiming Duke Energy had not proved the City was in violation of Article XVIII, Section 6 of the Ohio Constitution because Duke Energy's interpretation of the evidence was incorrect and not based on industry standard. Considering the trial court's decision finding Duke Energy failed to satisfy its burden of proof, the trial court clearly found Duke Energy's interpretation of the evidence it used to support its "fifty per cent limitation" claim lacked merit. We find no error in the trial court's decision. To meet its burden of proof, Duke Energy was required to provide evidence that its interpretation of the evidence presented at trial was correct. Relying on the testimony elicited from the three witnesses it called at trial as if on cross-examination, Perry, Logan, and Moats, rather than securing its own expert witness(es), Duke Energy did not provide any such evidence, thus leaving the trial court with no choice but to rule against it on its "fifty per cent limitation" claim.[5] Duke

---

5. Given the record before this court, and based on the arguments Duke Energy presented at trial and to this court on appeal, we find it necessary to note that counsel's statements, arguments, and assertions are not

Energy's first claim lacks merit.

## "Within a Given Period of Time"

{¶ 45} Duke Energy also argues the trial court erred by ruling against it on its "fifty per cent limitation" claim by finding a three-year average would have been the appropriate "given period of time" to use had it applied the *Hance* test to the case at bar, a decision Duke Energy claims was "erroneous as a matter of law." Rather than a three-year period, Duke Energy argues the trial court should have instead found the appropriate "given period of time" was limited to 2017, the year in which the City and the Township agreed to amend the JEDD to include the Added Area. We disagree.

{¶ 46} Despite Duke Energy's claims, the trial court's decision finding a three-year average would have been the appropriate "given period of time" to use had it applied the *Hance* test to the case at bar was fully supported by the record. This includes Perry's testimony elicited at trial indicating a multi-year period was necessary to evaluate the City's compliance with Article XVIII, Section 6 of the Ohio Constitution given the City's notably high reliance on hydroelectric power plants, as well as the impact that annual temperature variations may have on the City's residential power supply and demand. That is to say nothing of the fact that Duke Energy's own calculations of the City's alleged surplus and energy consumption included a similar multi-year period that the trial court determined would have been the appropriate "given period of time" to use. Duke Energy cannot have it both ways; either a multi-year average applies, or it does not. The trial court determined that a three-year average was appropriate. We find no error in the trial court's decision.

---

evidence. *See Corporate Exchange Bldgs. IV & V, L.P. v. Franklin Cty. Bd. of Revision*, 82 Ohio St.3d 297, 299 (1998) ("statements of counsel are not evidence"); *see also State v. Green*, 81 Ohio St.3d 100, 104 (1998) ("statement of facts by a prosecutor does not constitute evidence"). Those statements are instead manifestations of how his or her client believes the evidence presented at trial should be interpreted by the trial court. This is different from the witness testimony actually elicited at trial. This holds true regardless of whether that testimony is from a lay or expert witness. It is evidence, not argument, that wins the day. *See generally State v. Haney*, 70 Ohio App.3d 135, 138 (10th Dist.1991) ("although there was a hearing, no evidence, only argument of counsel, was presented").

Duke Energy's second argument lacks merit.

## "Incompetent" Hearsay Testimony

{¶ 47} Duke Energy additionally argues the trial court erred by ruling against it on its "fifty per cent limitation" claim since it allowed Perry, the City's utility business manager, to provide "incompetent" hearsay testimony about the weather conditions in 2017 and how those weather conditions impacted the City's supply of energy and the amount of electric energy supplied by the City to both itself and to its inhabitants. We again disagree.

{¶ 48} The admission or exclusion of relevant evidence is a matter within the sound discretion of the trial court. *Williams v. Parker Hannifin Corp.*, 188 Ohio App.3d 715, 725, 2010-Ohio-1719, ¶ 41 (12th Dist.). This court reviews a trial court's decision to admit challenged evidence for an abuse of that discretion. *Ginn v. Stonecreek Dental Care*, 12th Dist. Fayette Nos. CA2018-09-018, CA2018-09-019, and CA2018-11-022, 2019-Ohio-3229, ¶ 34, citing *State ex rel. Beavercreek Twp. Fiscal Officer v. Graff*, 154 Ohio St.3d 166, 2018-Ohio-3749, ¶ 23. An abuse of discretion is indicated where there is an arbitrary, unreasonable, or unconscionable attitude on the part of the common pleas court. *Natl. Amusements, Inc. v. Union Twp. Bd. of Zoning Appeals*, 12th Dist. Clermont No. CA2002-12-107, 2003-Ohio-5434, ¶ 7. An "arbitrary" decision "is one made 'without consideration of or regard for facts [or] circumstances.'" *State v. Beasley*, 152 Ohio St.3d 470, 2018-Ohio-16, ¶ 12, quoting Black's Law Dictionary 125 (10th Ed. 2014). A decision is "unreasonable" where it is not supported by a sound reasoning process. *Nationwide Agribusiness Ins. Co. v. Heidler*, 12th Dist. Clinton Nos. CA2018-06-003, CA2018-07-004, CA2018-09-012, and CA2018-09-015, 2019-Ohio-4311, ¶ 46; *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990) ("[a] decision is unreasonable if there is no sound reasoning process that would support that decision").

{¶ 49} The trial court did not abuse its discretion by allowing Perry to testify about the weather conditions in 2017 and how those weather conditions impacted the City's supply of energy and the amount of energy supplied by the City to both itself and its inhabitants. The entirety of Perry's testimony was based on easily obtainable data and calculations that Perry was deeply familiar with given his employment as the City's utility business manager. This includes Perry's testimony about the weather that Duke Energy challenges here, i.e., that the weather in 2017 was "extremely mild" in comparison to the weather in other years, thus creating a "heating and cooling degree day average" that was "ten percent below" what the City normally experiences in any given year. Despite Duke Energy's claims, we find nothing "incompetent" about Perry's testimony about the weather conditions in 2017, nor do we believe Perry's testimony about the weather can be classified as inadmissible hearsay under Evid.R. 802. Simply stated, the trial court's decision to admit Perry's testimony about the weather conditions in 2017 was not an abuse of discretion as there is nothing to indicate the trial court's decision to admit this testimony was arbitrary, unreasonable, or unconscionable given the record properly before this court.

{¶ 50} Regardless, even if we were to assume Duke Energy's challenge to Perry's testimony about the weather had merit, which it does not, Duke Energy's argument completely overlooks the part of the trial court's decision finding Duke Energy's failure to consider "electrical losses," standing alone, was "fatal to its position." The trial court's decision, therefore, was not dependent on Perry's testimony about the weather conditions in 2017 that Duke Energy now complains of. The trial court's decision was instead merely bolstered by that testimony making the trial court's decision to admit Perry's testimony, at worst, harmless error. Accordingly, given the record properly before this court, Duke Energy's argument alleging the trial court erred by ruling against it on its "fifty per cent limitation" claim since it allowed Perry, the City's utility business manager, to provide

"incompetent" hearsay testimony about the weather conditions in 2017 and how those weather conditions impacted the City's supply of energy and the amount of electric energy supplied by the City to both itself and its inhabitants also lacks merit. Duke Energy's third argument lacks merit.

{¶ 51} In light of the foregoing, and because we find no merit to any of the arguments advanced by Duke Energy within either its first or second assignments of error, Duke Energy's first and second assignments of error lack merit and are overruled.

**Conclusion**

{¶ 52} We find no merit to any of the arguments raised by Duke Energy within its three assignments of error. This is because, as noted above, Duke Energy failed to satisfy its burden of proof requiring it to prove its "artificial surplus" and "fifty per cent limitation" claims by a preponderance of the evidence. In so holding, we note that the City has set forth two "alternative grounds" it claims supports the trial court's decision. This decision, however, offers no opinion on the merits of either of these "alternative grounds" offered by the City, nor should this opinion be construed as tacit approval of any of the arguments raised by the City within either of these two "alternative grounds." Pursuant to App.R. 12(A)(1)(b), this court shall "[d]etermine the appeal on its merits on the assignments of error set forth in the briefs, the record on appeal under App.R. 9, and, unless waived, the oral argument under App.R. 21." That is exactly what this court did here, nothing more and nothing less. Therefore, finding no merit to any of the arguments raised by Duke Energy herein, the trial court's decision is affirmed.

{¶ 53} Judgment affirmed.

M. POWELL, P.J., and BYRNE, J., concur.