[Cite as *Miami Valley Constr. Group v. Thompson*, 2021-Ohio-4358.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| MIAMI VALLEY CONSTRUCTION GROUP LLC, | : | |
| | : | CASE NO. CA2021-03-024 |
| Appellee, | : | |
| | : | O P I N I O N |
| | | 12/13/2021 |
| - vs - | : | |
| | : | |
| JASON M. THOMPSON, et al., | : | |
| Appellants. | : | |

CIVIL APPEAL FROM LEBANON MUNICIPAL COURT
Case No. CVH1800567

Michael T. Columbus, for appellee.

Joseph C. Lucas, for appellants.

**PIPER, P.J.**

{¶1} Appellant, Jason Thompson, appeals a judgment of the Lebanon Municipal Court finding in favor of and awarding damages to appellee, Miami Valley Construction Group ("Miami Valley").

{¶2} In early January 2018, Thompson returned home from vacation to discover that a pipe had frozen and burst in his basement, causing extensive water damage. Thompson contacted Jay Bakhshi, owner of Miami Valley, to perform emergency water

remediation services. The same evening, Bakhshi went to Thompson's residence and temporarily repaired the pipe. The following day, he returned and continued the remediation services. On January 4, 2018, Bakhshi tendered a two-page document to Thompson, which the latter signed, authorizing Miami Valley "to complete the needed temporary / emergency repairs to my property." The document contained terms about the type of work to be completed, the price of the services, and provisions governing late charges.

{¶3} Bakhshi coordinated Miami Valley's services and pricing with an adjustor from Thompson's insurance carrier, Liberty Mutual. Miami Valley completed its work in ten days and submitted a bill to both Thompson and Liberty Mutual for $10,702.23. The bill was itemized and included brief descriptions of the charges and the corresponding work completed. Liberty Mutual initially issued a check payable to Thompson, his ex-wife, and Miami Valley. Thompson, however, secretly had Liberty Mutual reissue the check to himself alone, whereupon he refused to pay Miami Valley's invoice and instead personally retained the funds.

{¶4} On November 9, 2018, Miami Valley filed a complaint against Thompson in the Lebanon Municipal Court alleging three causes of action: (1) breach of contract, (2) action on an account; and (3) unjust enrichment. Miami Valley's complaint prayed for $10,702.23 in damages in addition to late fees, attorney fees, and costs. Thompson filed an answer and counterclaims alleging breach of contract and fraud. The matter was referred to a magistrate for trial.

{¶5} Following a one-day trial, the magistrate issued a decision finding that Thompson breached his contract with Miami Valley, and awarded Miami Valley $10,702.23 in damages. The matter was then scheduled for a hearing regarding attorney fees and the interest rate to be applied to the judgment. Upon filing objections to the magistrate's decision, Thompson discovered the proceedings had not been recorded. Since Thompson

could not provide a transcript, he raised the lack of recording as an additional objection and moved for a new trial. He also separately moved to dismiss the matter completely for lack of subject-matter jurisdiction, asserting that the amount in controversy exceeded the statutory threshold of a municipal court.

{¶6} The trial court deferred ruling on Thompson's objections to the magistrate to "review the arguments on the issue of the lack of recordings of the trial," to "resolve the issue of Attorney Fees," and to "resolve the interest rate issue." Both parties submitted affidavits of the evidence in lieu of a transcript pursuant to Civ.R. 53(D)(3)(b)(iii). The magistrate then issued another decision, denying Thompson's motion for a new trial, applying the statutory interest rate to the late fees addressed in the parties' contract, and awarding Miami Valley $9,922.50 in attorney fees. Thompson once again objected to the magistrate's decision on the same grounds as his prior objections.

{¶7} The trial court issued an order overruling all pending objections and adopting the magistrate's decision. Thompson requested findings of fact and conclusions of law, which the trial court denied. The trial court noted that it had "already adopted the Magistrate's Decisions in full," and described those decisions as "thorough, specific, and [satisfactory of] the requirements of Civ.R. 53." Thompson now appeals the trial court's decision, raising the following assignments of error:

{¶8} Assignment of Error No. 1:

{¶9} THE TRIAL COURT ERRED IN OVERRULING OBJECTIONS TO THE MAGISTRATE'S DECISIONS BECAUSE IT FAILED TO RECORD THE PROCEEDINGS BEFORE THE MAGISTRATE IN ACCORDANCE WITH CIV.R. 53, DEPRIVING THE COURT OF THE ABILITY TO CONDUCT A MEANINGFUL REVIEW OF THE MAGISTRATE'S FINDINGS OF FACT, OBJECTIONS THERETO, AND THE MAGISTRATE'S DECISIONS.

{¶10} In his first assignment of error, Thompson argues that the magistrate's failure to record the trial in accordance with both the Ohio Rules of Civil Procedure and the Lebanon Municipal Court's Local Rules deprived the trial court of the ability to meaningfully review the magistrate's decisions.

{¶11} When a party files an objection to a magistrate's decision, the trial court conducts an independent review as to the objections. Civ.R. 53(D)(4)(d). "A trial court's decision to modify, affirm, or reverse a magistrate's decision lies within its sound discretion and should not be reversed on appeal absent an abuse thereof." *Eastbrook Farms, Inc. v. Warren Cty. Bd. of Revision*, 12th Dist. Warren No. CA2010-09-084, 2011-Ohio-2103, ¶ 15. The trial court abuses its discretion only where its decision is unreasonable, arbitrary, or unconscionable. *Duke Energy Ohio v. Hamilton*, 12th Dist. Butler No. CA2021-03-023, 2021-Ohio-3778, ¶ 48.

{¶12} In the present case, Thompson argues that the magistrate's failure to record the proceedings violated both the Ohio Rules of Civil Procedure and the Local Rules of the Lebanon Municipal Court.

## Recording the Proceedings

{¶13} "Where a matter is referred to a magistrate, the magistrate and the trial court must conduct the proceedings in conformity with the powers and procedures conferred by Civ.R. 53." *Hart v. Spenceley*, 12th Dist. Butler No. CA2011-08-165, 2013-Ohio-653, ¶ 11. Civ.R. 53 provides in part that, "[e]xcept as otherwise provided by law, all proceedings before a magistrate shall be recorded in accordance with procedures established by the court." Civ.R. 53(D)(7). The Lebanon Municipal Court similarly provides that, "[t]he video and audio of all proceedings before the Court shall be recorded via digital recording equipment." Loc.R. 4.2. The court does not employ a court reporter, and instead utilizes a digital system to record its proceedings.

- 4 -

{¶14} The magistrate noted in its decision that "there was a malfunction in the Court's recording equipment" which prevented the proceedings from being recorded. It further noted that no similar equipment malfunction had occurred in its 17 years as a magistrate, and that "[a]ll electronic indicators were properly working when [the] Magistrate started the equipment prior to trial." Thus, we find no indication in the record that the magistrate's failure to record the proceedings was deliberate or a regular practice of the trial court.

### Affidavits in Lieu of a Recording

{¶15} The Ohio Rules of Civil Procedure provide a mechanism to produce a record in circumstances where normal recording procedures fail. Civ.R. 53(D)(7). According to Civ.R. 53(D)(3)(b)(iii) a party may support his or her objections with an affidavit of the evidence. The affidavit of evidence thus permits the trial court to conduct an independent review of the magistrate's decision if a transcript of the proceedings is unavailable.

{¶16} The Ohio Rules of Appellate Procedure similarly provide a safeguard against technical or human failure to record proceedings or inability to produce a transcript: "If no recording of the proceedings was made, if a transcript is unavailable, or if a recording was made but is no longer available for transcription, the appellant may prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection." App.R. 9(C)(1). Likewise,

> [i]n cases initially heard in the trial court by a magistrate, a party may use a statement under this division in lieu of a transcript if the error assigned on appeal relates solely to a legal conclusion. If any part of the error assigned on appeal relates to a factual finding, the record on appeal shall include a transcript or affidavit previously filed with the trial court as set forth in Civ.R. 53(D)(3)(b)(iii) * * *.

App.R. 9(C)(2).

{¶17} App.R. 9(C) applies to appeals and Civ.R. 53(D)(3)(b)(iii) applies to objections

to a magistrate's decision. Despite the fact that these rules apply to different aspects of litigation, the rules provide substantially similar procedures for producing a record of proceedings when one is otherwise unavailable. In the present case, both parties submitted affidavits of the evidence to the trial court pursuant to Civ.R. 53(D)(3)(b)(iii), and Thompson submitted a statement of the evidence to this Court pursuant to App.R. 9(C)(1).

{¶18} Thompson cites an Ohio Supreme Court case in support of his argument that the matter must be remanded for a new trial because the trial proceedings were not recorded. That case involved a permanent custody proceeding in juvenile court where the recording of a hearing stopped during the testimony of a witness. *In re B.E.*, 102 Ohio St.3d 388, 2004-Ohio-3361.

{¶19} The supreme court rejected the blanket rule that an App.R. 9(C) statement may never be used where a court fails to comply with its recording obligation. It instead noted that "[t]he procedures outlined in App.R. 9 are designed precisely for this type of situation, where a transcript is unavailable." *Id.* at ¶ 14. The supreme court's reversal in *In re B.E.* was necessary because counsel *could not* comply with App.R. 9(C), as the missing testimony could not be recalled by either party. The circumstances in *In re B.E.* are distinguishable and dramatically different than those currently before us. The supreme court emphasized that the specific facts of the case merited remand, because the missing testimony could not be recreated. *Id.* at ¶ 16.

{¶20} Thompson asserts he could not adequately recall the testimony nor recreate the missing record. However, his assertion appears disingenuous, where the record before us demonstrates otherwise. Thompson's Civ.R. 53(D)(3)(b)(iii) affidavit details the trial proceedings with great specificity, including references to the witnesses' testimony. His affidavit consisted of 11 pages and contained 216 separate averments, which completely

undermines his claim that he cannot remember the testimony.[1]

{¶21} We find that the detailed affidavits of both parties were sufficient to recreate the record and that the trial court was therefore able to conduct the necessary independent review of the magistrate's findings pursuant to Civ.R. 53(D)(4)(d) before adopting the magistrate's decision in full. Thompson's first assignment of error is without merit and is therefore overruled.

{¶22} Assignment of Error No. 2:

{¶23} THE TRIAL COURT ERRED IN OVERRULING THOMPSON'S OBJECTIONS ADOPTING DECISIONS OF THE MAGISTRATE THAT WERE UNSUPPORTED BY EVIDENCE AND BOTH IGNORED AND MISAPPLIED THE LAW OF CONTRACTS.

{¶24} In his second assignment of error, Thompson argues that there was not a valid contract between himself and Miami Valley and to the extent that there was, it was unconscionable and therefore unenforceable. Thompson further argues in this assignment of error that the damages awarded to Miami Valley are not supported by the evidence.

{¶25} Appellate review of a decision on the existence of a contract involves a mixed question of law and fact. *Premier Constr. Co., Inc. v. Maple Glen Apartments and Townhouses Ltd.*, 12th Dist. Clermont No. CA2020-03-011, 2020-Ohio-4779, ¶ 18. "When an issue presents such a mixed question of law and fact, a reviewing court will independently review the legal question de novo but will defer to the trial court's underlying factual findings, reviewing them only for clear error." *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 163 Ohio St.3d 337, 2020-Ohio-5371, ¶ 37. The appellate court will accept the factual findings of the trial court if supported by some competent, credible

---

1. Thompson's App.R. 9(C) statement adopts all of the information contained in his Civ.R. 53(D)(3)(b)(iii) affidavit.

evidence. *Premier Constr.* at ¶ 18.

The Essential Terms

{¶26} To prove the existence of a contract, a party must generally establish the presence of all the essential elements of a contract including offer, acceptance, and consideration. *Turner v. Langenbrunner*, 12th Dist. Warren No. CA2003-10-099, 2004-Ohio-2814, ¶ 13. For a services contract, "the essential terms are, generally, the parties and the subject matter." *Id.* at ¶ 26.

{¶27} In the case sub judice, Thompson signed a document tendered to him by Bakhshi when Miami Valley began to work on Thompson's house. The first complete sentence of the document reads, "I hereby authorize Miami Valley Construction Group LLC to complete the needed temporary / emergency repairs to my property." The document therefore specifies the essential terms in that it identified the parties as Thompson and Miami Valley and the subject matter of the parties' agreement, that Miami Valley would perform repairs to the property.

{¶28} Thompson contends that the lack of a specified price prevents the contract from being valid. However, it is long settled that "a written contract which does not specify the price or amount of compensation for services is not void for uncertainty." *Turner* at ¶ 13. When a contract for services does not specify the price to be paid, the law invokes the standard of reasonableness, and the fair value of the services is recoverable. *A N Bros. Corp. v. Total Quality Logistics, L.L.C.*, 12th Dist. Clermont No. CA2015-02-021, 2016-Ohio-549, ¶ 27. Here, the magistrate found that "Thompson implicitly agreed to pay for the reasonable value of the services rendered by Miami Valley," noting that "[t]here is no way to determine the scope and depth of the work required in an emergency water mitigation situation." Consequently, we agree with the trial court's adoption of the magistrate's decision to award Miami Valley damages based on the market price of the services

rendered to Thompson.

The Contract was not Unconscionable

{¶29} Thompson next contends that the contract between himself and Miami Valley was unenforceable because it was unconscionable. A determination of whether a written contract is unconscionable is an issue of law, and as such, is reviewed de novo. *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, ¶ 35. "When a trial court makes factual findings, however, supporting its determination that a contract is or is not unconscionable, such as any findings regarding the circumstances surrounding the making of the contract, those factual findings should be reviewed with great deference." *Id.* at ¶ 33.

{¶30} "Unconscionability includes both 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, ¶ 20, quoting *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 383 (1993). The party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable. *Taylor Bldg.* at ¶ 34.

{¶31} In determining whether a contract is unconscionable, courts consider the circumstances surrounding the contracting parties' bargaining, such as the parties' age, education, intelligence, business acumen and experience, who drafted the contract, whether alterations in the printed terms were possible, and whether there were alternative sources of supply for the goods in question. *Taylor Bldg.* at ¶ 44. Further, the Ohio Supreme Court has defined an adhesion contract as "a standardized form contract prepared by one party, and offered to the weaker party, usually a consumer, who has no realistic choice as to the contract terms." *Id.* at ¶ 49.

{¶32} After reviewing the record, we find that this contract is not unconscionable nor

one of adhesion. In Thompson's Civ.R. 53(D)(3)(b)(iii) affidavit, he repeatedly refers to his experience as a businessman in rehabilitating property and his experience investing in real estate and owning rental properties. Thus, Thompson was not a weak party, and instead, was experienced in home repairs and familiar with terms normally included in related services contracts. Given Thompson's business acumen, he would be aware of what services may be needed to remediate the water damage, as well as whether the proposed terms from Miami Valley were acceptable.

{¶33} Moreover, there is no indication in the record that Thompson had no choice regarding the contract or its terms. Thompson and Bakhshi both testified in their affidavits that they were friends before this incident. Thompson chose to seek Bakhshi's services, and could have looked elsewhere had he determined the provisions of the contract he now cites were unconscionable. Thus, we find that the contract was not unconscionable, nor was it one of adhesion.

The Damages Awarded to Miami Valley were Appropriate

{¶34} Thompson argues that the damages awarded to Miami Valley are not supported by the evidence.

{¶35} We review the trial court's award of damages for an abuse of discretion. *Griffin Contracting and Restoration v. McIntyre*, 12th Dist. Clermont No. CA2017-11-058, 2018-Ohio-3121, ¶ 35. This court will sustain the trial court's determination of damages unless the damage award is against the manifest weight of the evidence. *Jones v. Global Annex, LLC*, 12th Dist. Fayette Nos. CA2018-08-016 and CA2018-09-017, 2019-Ohio-2083, ¶ 40. "The party seeking damages on a breach of contract claim bears the burden of proving that claim by a preponderance of the evidence." *Schneble v. Stark*, 12th Dist. Warren Nos. CA2011-06-063 and CA2011-06-064, 2012-Ohio-3130, ¶ 77.

{¶36} "In a breach of contract action, a money damages claim is one which seeks

to compensate a party for the loss suffered as a result of a breach of contract." *Reed v. Triton Servs., Inc.*, 12th Dist. Clermont Nos. CA2013-07-055 and CA2013-07-060, 2014-Ohio-3185, ¶ 11. "Money damages awarded in a breach of contract action are designed to place the aggrieved party in the same position it would have been in had the contract not been violated." *State ex rel. Stacy v. Batavia Local School Dist. Bd. Of Edn.*, 105 Ohio St.3d 476, 2005-Ohio-2974, ¶ 26, quoting *Schulke Radio Prods., Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St.3d 436, 439 (1983).

{¶37} In the present case, the magistrate awarded Miami Valley $10,702.23, the amount prayed for in its initial complaint. At trial, Miami Valley introduced an itemized bill listing the services it provided and costs to be charged to Thompson. Bakhshi calculated this number using his "Xactimate" software, which utilizes industry specific pricing to determine the market rate for supplies and services. The Xactimate price estimate matched estimates provided by insurance companies, and Thompson's provider, Liberty Mutual, paid Miami Valley's invoice without hesitation.

{¶38} The magistrate found that "Miami Valley discharged its remediation duties in a workmanlike manner, and the costs were reasonable." The magistrate further noted that "Bakhshi was a credible witness, with extensive experience in the construction and mitigation industries." We therefore find that there is competent and credible evidence to support the award of damages to Miami Valley.

{¶39} After reviewing the record, we find that Thompson and Miami Valley entered into a valid and fully enforceable contract and that the damages awarded upon breach of that contract are supported by the evidence. Accordingly, Thompson's second assignment of error is without merit and is consequently overruled.

{¶40} Assignment of Error No. 3:

{¶41} THE TRIAL COURT LACKED SUBJECT-MATTER JURISDICTION AND ITS

JUDGMENT IS VOID.

{¶42} In his final assignment of error, Thompson argues that the trial court lacked subject-matter jurisdiction to decide the case, alleging that the money damages prayed for were in excess of the statutory limit for municipal court jurisdiction.

{¶43} Whether a court possesses subject-matter jurisdiction over a case is a matter of law that this court reviews de novo. *Merritt v. Ohio Dept. of Job and Family Servs.*, 12th Dist. Butler No. CA2019-09-160, 2020-Ohio-2674, ¶ 17. "Subject-matter jurisdiction of a court connotes the power to hear and decide a case upon its merits." *Morrison v. Steiner*, 32 Ohio St.2d 86, 87 (1972). In deciding the jurisdiction of municipal courts, monetary jurisdiction is treated as an aspect of subject-matter jurisdiction. *State ex rel. Natl. Emp. Benefit Servs. v. Court of Common Pleas of Cuyahoga Cty.*, 49 Ohio St.3d 49, 50 (1990).

{¶44} Ohio municipal courts are statutorily created. *Cheap Escape Co. v. Haddox, LLC*, 120 Ohio St.3d 493, 2008-Ohio-6323, ¶ 7. Their subject-matter jurisdiction is accordingly also set by statute:

> A municipal court shall have original jurisdiction only in those cases in which the amount claimed by any party, or the appraised value of the personal property sought to be recovered, does not exceed fifteen thousand dollars * * *. Judgment may be rendered in excess of the jurisdictional amount, when the excess consists of interest, damages for the detention of personal property, or costs accrued after the commencement of the action.

R.C. 1901.17. "[B]ecause the monetary restrictions in R.C. 1901.17 limit the municipal court's subject matter jurisdiction, * * * dismissal is also required when an initial pleading seeks relief beyond this statutory authority." (Citation omitted.) *State ex rel. Natl. Emp. Benefit Servs.* at 50.

{¶45} Miami Valley prayed for $10,702.23 in its initial complaint and submitted an itemized invoice in support. The magistrate awarded the full amount of money damages

- 12 -

following trial. We agree that the magistrate's finding on money damages, confirmed by the trial court, is supported by the evidence.

{¶46} In its complaint, Miami Valley also prayed for "late fees, attorney fees and costs as provided for in the parties' agreement." The contract between the parties provided that the homeowner "shall pay in addition to services and attorney fees for collection, a late charge of whichever is greater 3% or $300 of any sum not received by contractor within seven (7) days after contractor indicates to owner that the sum is due." It further provided that "these fees and percentages will apply every 30 days and every 30 days thereafter until paid in full." Following trial, the magistrate held a separate hearing to determine the appropriate measure of late fees and attorney fees pursuant to the contract. At the hearing, the magistrate concluded that the phraseology of the late fee provision rendered that portion of the contract ambiguous. The magistrate determined that the parties had not had a meeting of the minds regarding the late fees. The magistrate consequently applied the statutory interest rate to Miami Valley's damages pursuant to R.C. 1343.03(A) and additionally ordered Thompson to pay $9,922.50 in attorney fees. The trial court affirmed the magistrate's decision.

{¶47} Thompson now argues that applying the late fees provision of the contract to the $10,702.23 judgment awarded to Miami Valley produces a sum of $3,331.58. He further argues that in conjunction with this amount, a plumbing bill for $1,140.28 which Miami Valley submitted after its original complaint takes its total prayer for damages beyond $15,000 and thus outside the jurisdiction of the Lebanon Municipal Court. We find this argument wholly unpersuasive.

{¶48} Thompson suggests a calculation of $3,331.58 as potential late fees referenced in the parties' contract. However, as noted above, the trial court never awarded

late fees, but instead awarded statutory interest.[2]  According to the monetary jurisdiction statute, "[j]udgment may be rendered in excess of the jurisdictional amount, when the excess consists of *interest*, damages for the detention of personal property, or *costs accrued after the commencement of the action*."  (Emphasis added) R.C. 1901.17.  The trial court's award of statutory interest stands outside of the jurisdictional amount and thus does not factor into a determination of monetary jurisdiction.

{¶49} Thompson is correct that Miami Valley submitted a plumbing invoice for $1,140.28.  However, as the magistrate noted in its decision, Miami Valley never amended its complaint to pray for the greater amount that included the plumbing invoice.  The amount Miami Valley prayed for remained the same as in its initial complaint.  Because the late fee provision was struck from the contract and statutory interest awarded instead, even if Miami Valley had amended its complaint to incorporate the plumbing invoice, its amount claimed would be well within the trial court's jurisdictional limit.  Thompson's final assignment of error is meritless and is consequently overruled.

{¶50}  Judgment affirmed.


HENDRICKSON and M. POWELL, JJ., concur.

---

2. We note that even though the magistrate declined to award any late fees, assuming *ad arguendo* Thompson's calculation of $3,331.58 would be added to the $10,702.23 judgment amount, the result would be an award of $14,033.81, which is within the trial court's $15,000 jurisdictional limit.