[Cite as *Grisham v. Meadow Ridge Cincinnati Assocs., L.P.*, 2022-Ohio-2328.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| JULIA GRESHAM, | : | CASE NO. CA2021-10-124 |
| Appellee, | : | O P I N I O N<br>7/5/2022 |
| | : | |
| - vs - | : | |
| | : | |
| MEADOW RIDGE CINCINNATI<br>ASSOCIATES, LP, | : | |
| Appellant. | : | |

CIVIL APPEAL FROM BUTLER COUNTY AREA III COURT
Case No. CVI 1900918

Lyons and Lyons, and Kathleen W. Adams, for appellee.

Heyman Law, LLC, and Matthew W. Faber and D. Andrew Heyman, for appellant.

**M. POWELL, P.J.**

{¶ 1} Meadow Ridge Cincinnati Association, LP ("MRC") appeals the judgment of the Butler County Area III Court overruling its objections and adopting a magistrate's decision awarding Julia Gresham damages and attorney fees on her claim that MRC violated R.C. 5321.16 of the Landlord-Tenant Act.

{¶ 2} R.C. 5321.16(B) generally provides that when a rental agreement is

terminated, the landlord may deduct from the tenant's security deposit past due rent and any amount for damages owed under the rental agreement. The landlord must itemize and identify any deductions that it makes from the security deposit in a written notice and, within 30 days, send the notice along with what is left of the security deposit to the tenant. Division (C) of the statute provides that if the landlord fails to comply, the tenant may recover the money due plus damages in an amount equal to the amount wrongfully withheld as well as attorney fees.

{¶ 3} From 2003 to 2019, Gresham leased an apartment at Meadow Ridge Apartments. When she moved in, she deposited $250 as a security deposit. In 2007, Gresham was given permission to have a dog in her apartment. An Animal Addendum added to her lease required her to pay a monthly animal fee and to deposit an additional $300 as an animal deposit. Gresham later obtained a second dog and kept both dogs in her apartment until she moved out.

{¶ 4} When Gresham first moved in, Meadow Ridge Butler, LP ("MRB") owned the apartment complex. In 2014, MRB sold the apartments to MRC. Under the Purchase and Sale Agreement and an Assignment and Assumption of Leases agreement, MRC was credited with all tenant deposits and assumed MRB's obligations under the leases including all obligations with respect to tenant deposits.

{¶ 5} On March 19, 2019, Gresham moved out. Three days later, MRC mailed her a check for $211.20 as a refund of her security deposit. The included "Move Out Statement" shows that MRC charged Gresham $375 for painting walls in the apartment and $95 to replace vertical blinds. The following month, Gresham sent MRC an email disputing the charge for the vertical blinds, asserting that any damage was due to normal wear and tear. She also told MRC that it had not returned the $300 animal deposit that she had given the previous owners. MRC responded that its records did not show that Gresham had ever

paid an animal deposit and asked Gresham for proof of payment. A later email from MRC explained to Gresham that its ledger showed that an animal deposit was charged and credited to her account, but not that it was ever paid. MRC also said that the money was not transferred as a deposit from the previous owner. In order to return the animal deposit, MRC told Gresham, it would need to see a cancelled check or other proof of payment. Gresham told MRC that, after all these years, she no longer had any documentary proof that she had paid the deposit.

{¶ 6}  On July 24, 2019, Gresham filed this action claiming that MRC had violated R.C. 5321.16 by wrongfully withholding $95 of the initial security deposit and the entire $300 animal deposit. She sought to recover both amounts, damages equal to the wrongfully withheld amounts, and attorney fees. In August 2020, a trial was held before a magistrate. Gresham testified that in the summer of 2007 she paid the $300 animal deposit by money order to Jennifer Day, an MRB employee. Documentary evidence was also presented, including lease agreements from 2013 to 2017; accounting ledgers showing charges, credits, and payments to Gresham's account; and the Purchase and Sale Agreement as well as the Assignment and Assumption of Leases agreement that were executed as part of MRC's purchase of the apartment complex.

{¶ 7}  In October 2020, the magistrate issued a decision finding, first, that because the $375 and $95 repair charges exceeded the amount of the $250 security deposit, Gresham was not entitled to any of that deposit. As for the animal deposit, the magistrate found that Gresham had paid the $300 deposit and that MRC had assumed the obligation to return it but had not. Therefore, MRC had violated R.C. 5321.16. The magistrate awarded Gresham the wrongfully withheld $300 plus statutory damages of $300 and $5,695 in attorney fees.

{¶ 8}  MRC filed several objections to the magistrate's decision. On July 20, 2021,

the trial court overruled the objections and adopted the magistrate's decision. MRC appealed.

{¶ 9} Sole Assignment of Error:

{¶ 10} THE TRIAL COURT ERRED IN FINDING IN FAVOR OF GRESHAM AND AGAINST MEADOW RIDGE CINCINNATI REGARDING GRESHAM'S CLAIM THAT MEADOW RIDGE CINCINNATI IMPROPERLY FAILED TO RETURN HER PET DEPOSIT.

{¶ 11} We consider first our standard of review. Civ.R. 53(D)(4)(b) states that "[w]hether or not objections are timely filed, a court *may* adopt or reject a magistrate's decision in whole or in part, with or without modification." (Emphasis added.). Accordingly, the focus of our review must be on whether the trial court abused its discretion by adopting the magistrate's decision and awarding Gresham damages. *See Miami Valley Construction Group LLC v. Thompson*, 12th Dist. Warren No. CA2021-03-024, 2021-Ohio-4358, ¶ 11 (stating that an abuse-of-discretion standard applies when reviewing a trial court's decision to adopt, modify, or vacate the order of a magistrate). At the same time, "[i]n determining whether the trial court's judgment was against the weight of the evidence, every reasonable inference and presumption must be made in favor of the judgment and the findings of fact." *Wedlake v. Elswick*, 2d Dist. Montgomery No. 28873, 2021-Ohio-1119, ¶ 15. "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the [trial court's] * * * judgment[.]" *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 21.

{¶ 12} In reviewing MRC's arguments, we must be guided by the presumption that the factfinder was best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and to use these observations in weighing the credibility of the proffered testimony. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). For this reason, we defer to the factual findings of the factfinder regarding the credibility of the

witnesses. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. We may not substitute our judgment for that of the trier of fact. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶ 13} R.C. 5321.16(B) and (C) "deal particularly with aspects of the termination of the tenancy, including the rights and duties of the landlord and tenant regarding the disposition of rental security deposits." *Vardeman v. Llewellyn*, 17 Ohio St.3d 24, 26 (1985). These divisions state:

> (B) Upon termination of the rental agreement any property or money held by the landlord as a security deposit may be applied to the payment of past due rent and to the payment of the amount of damages that the landlord has suffered by reason of the tenant's noncompliance with section 5321.05 of the Revised Code or the rental agreement. Any deduction from the security deposit shall be itemized and identified by the landlord in a written notice delivered to the tenant together with the amount due, within thirty days after termination of the rental agreement and delivery of possession. * * *

> (C) If the landlord fails to comply with division (B) of this section, the tenant may recover the property and money due him, together with damages in an amount equal to the amount wrongfully withheld, and reasonable attorneys fees.

{¶ 14} MRC first contends that Gresham should not be awarded anything because the amount that it returned to her exceeded the amount that she was entitled to recover from the $550 combined security deposits. Noting that Gresham did not contest the $375 painting charge, MRC argues that, assuming the $95 was wrongfully withheld, it would owe her only $175, which is less than the $211.20 that it refunded her. This argument is based on an incorrect analysis of the facts.

{¶ 15} The provisions regarding security deposits in four of the five Lease Contracts in evidence are the same.[1] The $250 "general security deposit" and the $300 "animal

---

1. Apparently, these are the only ones the parties have copies of. All four are the same preprinted form

deposit" are two separate security deposits, as the Animal Addendum to the Lease Contract explains:

> 4. ANIMAL DEPOSIT. An animal deposit of $_____ will be charged. This deposit will not be considered part of the general security deposit for any purpose. The security deposit amount in Provision 4 of the Lease Contract does not include this additional deposit amount. Refund of the animal deposit will be subject to the terms and conditions set forth in the Lease Contract.[2]

The "terms and conditions" in the Lease Contract impose liability on the tenant for certain charges:

> 41. SECURITY DEPOSIT DEDUCTIONS AND OTHER CHARGES. You'll be liable for the following charges, if applicable: unpaid rent; unpaid utilities; unreimbursed service charges; repairs or damages caused by negligence, carelessness, accident, or abuse * * *; and other sums due under this Lease Contract.

The lease states in another provision that the "security deposit refund (less lawful deductions) and an itemized accounting of any deductions" will be timely mailed to the tenant.

{¶ 16} As an initial matter, we agree that the animal deposit under the leases here was a security deposit. "Security deposit," as defined in R.C. 5321.01(E), means "any deposit of money or property to secure performance by the tenant under a rental agreement." "[W]here a pet deposit or pet fee is given to secure performance by the tenant under the lease, it may be considered a security deposit subject to the provisions of R.C. Chapter 5321 and applicable case law." *Pool v. Insignia Residential Group*, 136 Ohio App.3d 266, 270 (1st Dist.1999). The Animal Addendum here distinguishes between an

---

contracts. The Animal Addendums included with each contain the same preprinted provisions pertinent in this case. The 2013 lease is different from the others and does not include an Animal Addendum. Gresham testified that there was one but, for reasons that are not explained, it was not included.

2. In the Animal Addendums included in the 2014-2016 leases, "$300.00" is typed in the blank. In the 2017 addendum, the blank remains blank.

animal deposit and a recurring animal fee. Paragraph four of the addendum, quoted above, designates the animal deposit as a refundable amount given to secure payment for any damages caused by the animals allowed in an apartment. The next paragraph requires the tenant to pay a monthly animal fee:

> 5. ADDITIONAL MONTHLY RENT. Your total monthly rent (as stated in the Lease Contract) will be increased by $_____. * * *

Accordingly, we agree that the $300 animal deposit at issue here is a security deposit subject to R.C. 5321.16. *See id.* at 270-271 (holding that a monthly pet fee was not a security deposit but that a separate onetime pet fee might be).

{¶ 17} Soon after Gresham moved out, on March 19, 2019, MRC mailed her a notice about the "disposition of her security deposit" along with a check for $211.20. Included was a "Move Out Statement" listing the transactions, in ledger form, applied to her account in March. The statement begins with the account balance and then lists various credits and charges, like this:

| | Charges | Credits | Balance |
|---|---|---|---|
| Balance as of 3/01/2019 | | | ($1,074.99) |
| Rent (03/2019) | $1,050.00 | | |
| NRR Renewal Concession | | ($90.00) | |
| SECURITY DEPOSITS credit | | ($250.00) | |
| Rent Credit | | ($406.45) | |
| NRR Renewal Concession credit | $34.84[3] | | |
| replace vertical binds | $95.00 | | |
| repaint walls | $375.00 | | |
| Final Enviro Fee | $14.38 | | |
| Final Service Fee | $5.26 | | |
| Final Trash | $8.62 | | |
| Final Water | $27.04 | | |
| Final Water/Sewer | $0.10 | | ($211.20) |

The statement shows that after all the credits ($746.45) are added and all the charges

---

3. This appears to have been mistakenly entered as a charge rather than a credit. The entry is described as a "credit," and the earlier NRR Renewal Concession was entered as a credit.

($1,610.24) are subtracted, the resulting balance is $211.20 in Gresham's favor, which is the amount that MRC refunded her. But that amount is not really a refund of the security deposit. Rather, it is simply the surplus left in her account after all the charges, credits, and payments that were ever entered on her account are calculated. Basically, $211.20 is the amount that Gresham had overpaid.

{¶ 18} Only $38.80 of the amount that MRC refunded was actually withheld from the security deposit. Under the lease, Gresham was obligated to pay for all the charges listed on the Move Out Statement, including the repair costs for repainting the walls and (arguably) replacing the blinds. Like it did for the unpaid utilities, MRC simply added the repair charges to Gresham's account. If she had not paid the security deposit, the balance of her account would have been $38.80 in MRC's favor, that is, Gresham would have owed MRC that amount. But since she had paid the deposit, MRC just deducted from the deposit the $38.80 that Gresham owed and sent her the $211.20 that was left.

{¶ 19} The magistrate got the analysis wrong too. He focused solely on the $250 security deposit (considering the $300 animal deposit separately) and deducted $375 for painting the walls and $95 to replace the vertical blinds. This led the magistrate to find (incorrectly) that MRC had refunded Gresham more than it should have. MRC makes the same mistake, only it combines the two deposits and then deducts the (undisputed) painting charge, which equals less than the amount that it refunded her.

{¶ 20} The correct factual analysis, though, shows that MRC actually refunded Gresham less than she was entitled to. Assuming that the general security deposit and the animal deposit should be combined, as MRC urges in its argument, MRC would owe Gresham $606.20 ($211.20 + $95 + $300). MRC did not refund her nearly that much. Gresham does not challenge the trial court's finding regarding the $95 charge for the blinds, so we assume that MRC properly withheld that amount. But MRC has not convinced us

that it should not be liable for wrongfully withholding the animal deposit.

{¶ 21} MRC next contends that Gresham failed to prove that she in fact paid the animal deposit. The trial court found that Gresham did prove this, citing "the inconsistent leases, the fact that it was MRC who prepared the preprinted leases, and the credible testimony of Gresham who testified that she did, in fact, pay a $300.00 pet deposit that was carried over." MRC argues that she also needed documentation that explicitly shows she paid.

{¶ 22} "An assertion of payment is an affirmative defense to an action to collect a debt. The party asserting payment bears the burden of proof." (Citations omitted.) *Hicks v. Hicks*, 12th Dist. Brown No. CA99-09-112, 2000 WL 1073030, *2 (Jul. 24, 2000). "This follows from the fact that payment is an affirmative defense to an action on a debt, and is consistent with the general principle that the burden of proof should be upon that party who is in the best position to come forward with evidence." (Citation omitted.) *Loudakis v. Loudakis*, 2d Dist. Greene No. 92-CA-30, 1993 WL 155663, *1 (May 10, 1993). "It can be expected that a payor will retain receipts, cancelled checks, or other satisfactory proof of payment. The payor is in the best position to prove the payments he has made. An alleged payee is at a comparative disadvantage in attempting to prove a negative that an alleged payment or payments were not made." *Id.* at *2.

{¶ 23} While the payor may have the burden to establish payment, there is no evidentiary rule that documentary evidence like receipts or cancelled checks is the only way the payor can satisfy this burden. In the present case, Gresham testified that she paid the animal deposit and gave details about when she paid it, the manner of payment, and whom she paid. The trial court found her testimony credible. Gresham's testimony is evidence of payment, and her testimony is supported by other evidence. MRC's ledgers contain transactions entered after it purchased the apartment complex indicating that Gresham had

paid the animal deposit: a 3/17/2015 transaction charges her $300 for "Pet Deposit," and a 3/31/2015 transaction credits her $300 for "Pet Deposit Previously Charged with seller." Furthermore, Gresham's 2015 lease includes a typewritten note in the "Special Provisions" section stating, "resident has a $300.00 refundable pet deposit that is not reflected on her ledger from the previous owners." Finally, the evidence as a whole shows that MRC had always acted as though Gresham had paid the animal deposit. Only now is MRC questioning whether she paid it, insisting that she should have saved a receipt or cancelled check all these years as proof. The evidence supports the trial court's finding that Gresham paid the animal deposit, and we defer to the court on this factual question.

{¶ 24} MRC further contends that it is not obligated to return the animal deposit because when it purchased the apartment complex it was not assigned the obligation for that deposit and did not receive credit for it from MRB, the previous owner. MRC argues that "Tenant Deposit" as defined in the Purchase and Sale Agreement does not include an animal deposit and that it had no knowledge of any obligation to Gresham for the animal deposit because the deposit was not reflected on the "Rent Roll," which purportedly listed all MRB's obligations with respect to rent, deposits, delinquencies, and credits.

{¶ 25} "In Ohio, security deposits are not 'rent, issues, and profits' of the property; rather, they are a personal obligation in the nature of a pledge between the landlord and the tenant. The liability to return the deposit remains with the pledgee as such, and not with a subsequent lessor, unless the subsequent lessor has assumed the obligation or has received a credit on the purchase price for the amount of the security deposits." *Castlebrook, Ltd. v. Dayton Properties Ltd. Partnership*, 78 Ohio App.3d 340, 348 (2d Dist.1992), citing *Tuteur v. P. & F. Enterprises, Inc.*, 21 Ohio App.2d 122, 133 (8th Dist.), and *Lindblad v. Carter*, 11th Dist. Portage No. 989, 1981 WL 4427, *2 (Jan. 26, 1981), quoting 33 American Jurisprudence 2d, Landlord and Tenant, Section 398, at 305-306. By

law, then, either a credit for a security deposit or an assumption of an obligation for a security deposit is adequate for a subsequent lessor to be liable for the deposit.

{¶ 26} The Purchase and Sale Agreement defines "Tenant Deposits" as "the deposits, if any, made by Tenants * * * less the amount such deposits have been charged, offset or otherwise reduced by Seller as permitted under the tenant Leases or under applicable law." A provision in the agreement, under a paragraph titled, "Seller's Representations and Warranties," pertinently states:

> (vii) To Seller's actual knowledge, as of the date set forth thereon, (i) the rent roll attached hereto as Exhibit "O" ("Rent Roll") lists all existing Tenant Leases related to the Property * * *.

Gresham's animal deposit is not listed on the rent roll. Indeed, the animal deposit is not explicitly listed in any of the purchase and sale documents.

{¶ 27} The trial court nevertheless found that those documents show that MRC agreed to assume *all* MRB's liabilities and obligations—whether or not listed on the rent roll—and that this included Gresham's animal deposit. The evidence supports the court's finding. A provision in the Purchase and Sale Agreement pertinently states:

> Tenant Deposits and Prepaid Rents. * * * Buyer shall be credited and Seller shall be debited with an amount equal to the amount of the Tenant Deposits and prepaid rents. Upon the Closing, Buyer shall assume all of Seller's obligations with respect to the Tenant Deposits and prepaid rents.

Provisions in the Assignment and Assumption of Leases agreement also address MRC's obligations and tenant deposits:

> Assumption of Obligations. By acceptance of this Assignment, Assignee hereby assumes and agrees to perform and to be bound by all of the terms, covenants, conditions and obligations imposed upon or assumed by Assignor under the Leases. Said assumption shall have application only to those obligations under or in connection with the Leases first accruing or arising on or after the delivery of this Assignment and shall have no application to obligations accruing or arising prior to said date.

Tenant Deposits. Assignee hereby acknowledges receipt of a credit equal to the amount of, and in payment of, all Tenant Deposits and prepaid rents and hereby assumes all of the obligations in connection therewith.

{¶ 28} The definition of "Tenant Deposit" in the Purchase and Sale Agreement is easily broad enough to include the animal deposit. The quoted agreements show that MRC assumed all MRB's obligations with regard to these deposits. That MRB may not have kept good records and informed MRC of Gresham's animal deposit at the time of the sale of the apartment complex is unavailing. Indeed, the Purchase and Sale Agreement seems to tacitly acknowledge that some things may have slipped through the cracks. The "Seller's Representations and Warranties" provision partially quoted above goes on to states that "(ii) the information set forth on the Rent Roll with respect to rent, deposits, delinquencies and credits is true and correct, *except for such inaccuracies which are not material when taken in aggregate.*" (Emphasis added.)

{¶ 29} MRC lastly contends that it could not have failed to perform its statutory obligations because it did not know that it held Gresham's animal deposit or that it had assumed liability for the deposit. MRC claims that, because the rent rolls did not list the animal deposit, any failure to comply with R.C. 5321.16(B) was the result of innocent ignorance.

{¶ 30} The Ohio Supreme Court has described a landlord's obligations under R.C. 5321.16 in terms indicating that a landlord is strictly liable for noncompliance:

> There is no requirement that a conscious, deliberate, or intentional attempt to cause harm be proved in order to recover statutory double damages pursuant to R.C. 5321.16(C). * * * In *Smith v. Padgett* (1987), 32 Ohio St.3d 344, 513 N.E.2d 737, we held that "R.C. 5321.16(B) and (C) do not require bad faith on the part of the landlord. * * *" (Citations and footnotes omitted.) *Id.* at 349, 513 N.E.2d at 742. * * * Thus, to recover double damages under R.C. 5321.16(C) the tenant need prove only that the security deposit, or some portion thereof, has been

wrongfully withheld. Such proof automatically triggers the recovery of an additional amount equal to that which was wrongfully withheld. In *Padgett*, we held that the award of damages provided in R.C. 5321.16(C) is mandatory if a landlord wrongfully withholds a portion of a tenant's security deposit. *Id.* at paragraph three of the syllabus.

*Klemas v. Flynn*, 66 Ohio St.3d 249, 251 (1993). In other words, "R.C. 5321.16(B) and (C) do not require bad faith on the part of the landlord before a tenant can recover." *Compton v. Spinks*, 12th Dist. Clinton No. CA2003-08-019, 2004-Ohio-3673, ¶ 11. *See also Forquer v. Colony Club*, 26 Ohio App.3d 178, 180 (10th Dist.1985) ("One of the purposes of R.C. 5321.16[C] is to remove any obligation of the tenant to prove bad faith or improper motive on the part of the landlord"). "Conversely, a showing of good faith is no defense." *Buck v. Georgian Manor Investments*, 8th Dist. Cuyahoga No. 67170, 1995 WL 143813, *4 (Mar. 30, 1995). Whether MRC knew about its obligation for Gresham's animal deposit is irrelevant. It may be held strictly liable for failing to comply with R.C. 5321.16.

{¶ 31} On the record before us, we conclude that the trial court did not abuse its discretion by overruling MRC's objections to the magistrate's decision and adopting that decision as its own. The evidence supports the trial court's findings that Gresham paid a $300 animal deposit, that MRC assumed the obligation for the deposit, and that MRC did not refund the deposit or otherwise account for it. MRC may be held liable for its failure to comply with R.C. 5321.16(B). The sole assignment of error is overruled.

{¶ 32} Judgment affirmed.

HENDRICKSON and BYRNE, JJ., concur.

- 13 -