[Cite as *Bank of Am. N.A. v. Dickerson*, 2025-Ohio-1141.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., | : | CASE NO. CA2024-10-068 |
| Appellee, | : | |
| | : | O P I N I O N<br>3/31/2025 |
| - vs - | : | |
| | : | |
| ELIZABETH DICKERSON, | : | |
| Appellant. | : | |

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 23CV96757

Lloyd & McDaniel PLC, and Christina W. Davenport and Joshua A. De Renzo, for appellee.

Yonas & Phillabaum, LLC, and Hope E. Platzbecker and Jason Phillabaum, for appellant.

**M. POWELL, J.**

{¶ 1}  Appellant, Elizabeth Dickerson, appeals a decision of the Warren County Court of Common Pleas granting judgment in favor of appellee, Bank of America, N.A.

{¶ 2}  On November 20, 2024, Bank of America (the "Bank") filed a complaint against appellant, alleging a claim on an account and unjust enrichment. The complaint sought a $26,877.83 judgment against appellant for monies she allegedly owed on a

credit card account with the Bank. The matter proceeded to a bench trial before a magistrate on August 14, 2024. The magistrate heard testimony from Pamela Ritter, the Bank's records custodian, and appellant.

{¶ 3} Based upon the Bank's records, Ritter testified that a credit card account was opened in appellant's name via an electronic application on July 22, 2019 (Exhibit 1). The application was not signed. Upon the opening of the account, the Bank provided a copy of the account cardholder agreement (Exhibit 2). Over the next few years, charges were made to the account, monthly statements were mailed to appellant at her residence address, and monthly payments were made. Among the charges made to the account was an access check in appellant's name that was used to pay Synchrony Bank (Exhibit 4). The monthly statements (Exhibit 3) included instructions on how to dispute fraudulent charges. The last payment on the account was posted on September 8, 2022, in the amount of $685. The account was ultimately closed due to a failure of minimum payments. At the time of the trial, the account had an outstanding balance of $26,877.83.

{¶ 4} Appellant testified that her ex-husband, Phillip Perdue, opened the account without her knowledge or authorization, that he used it for his personal benefit, and that he concealed the monthly statements from her. Appellant filed a complaint for divorce from Perdue in August 2022 and they were divorced pursuant to a final decree of divorce journalized on December 12, 2022 (Exhibit A). Appellant testified that she first became aware of the account during the divorce proceedings, and that pursuant to the divorce decree, Perdue agreed to assume the debt associated with the account.[1] Appellant

---

1. An exhibit listing Perdue's credit card debts was attached to the separation agreement that was incorporated into the divorce decree. The exhibit included the debt associated with the account with the Bank and stated, "Husband shall make every effort to transfer this card into his name. He shall make minimum payments on this card to prevent the account from going into default or delinquency until the card is paid off or transferred into his name. Husband shall pay off this card or transfer this card to his name within 16 months."

acknowledged that after she became aware of the account, she made the $685 payment to prevent the account from being referred for collection. Appellant's cross-examination revealed that the account was used to pay for airline tickets for appellant in 2019 and 2021, and attorney fees to her counsel's former law firm in 2021. Appellant denied authorizing any of the charges on the account, including the 2019 and 2021 airfare and the attorney fees, and claimed that the charges were initiated by Perdue without her knowledge or consent. Appellant testified she was told by Perdue that he would pay for the 2019 and 2021 airfare with his debit card. The parties' exhibits were admitted into evidence.

**{¶ 5}** On August 15, 2024, the magistrate issued a decision granting a $26,877.83 judgment in favor of the Bank on its claim on an account and dismissing the unjust enrichment claim with prejudice. The magistrate found that the account was opened in appellant's name, that payments were made on the account in her name, that no fraud claim was ever made on the account, and that upon learning of the account, appellant made a payment on the account instead of submitting a fraud claim. Therefore, the magistrate found that the Bank had satisfied its burden of proof by clear and convincing evidence regarding its claim on an account (we note that the magistrate's decision variously refers to this claim as one on an account and for breach of contract). Appellant filed objections to the magistrate's decision.

**{¶ 6}** On October 11, 2024, the trial court overruled appellant's objections and adopted the magistrate's decision. The trial court found that the magistrate (1) was in the best position to evaluate the credibility of the witnesses, (2) determined that the account belonged to appellant who was responsible for the charges incurred on the account, and (3) did not find credible appellant's testimony that the account was fraudulently opened.

**{¶ 7}** Appellant now appeals, raising one assignment of error:

**{¶ 8}** THE TRIAL COURT ERRED BY DETERMINING THAT THERE WAS A CONTRACT BETWEEN THE PARTIES.

**{¶ 9}** Appellant argues that the trial court erred in granting judgment in favor of the Bank and against her because the Bank failed to establish the existence of a contract between them. Appellant asserts that the Bank "simply allowed another person to open a line of credit in [her] name without even requiring a signature . . . based solely on [Perdue's] fraudulent misrepresentations." Appellant asserts that her testimony plainly shows that she had no part in Perdue's fraudulent opening and use of the account and that she did not learn about the fraud until it was too late to do anything about it.

**{¶ 10}** Civ.R. 53(D)(4)(b) states that "[w]hether or not objections are timely filed, a court may adopt or reject a magistrate's decision in whole or in part, with or without modification." Accordingly, the focus of our review must be on whether the trial court abused its discretion by adopting the magistrate's decision and awarding a $26,877.83 judgment in favor of the Bank and against appellant. *Gresham v. Meadow Ridge Cincinnati Assocs., L.P.*, 2022-Ohio-2328, ¶ 11 (12th Dist.). "At the same time, '[i]n determining whether the trial court's judgment was against the weight of the evidence, every reasonable inference and presumption must be made in favor of the judgment and the findings of fact.'" *Id.*, quoting *Wedlake v. Elswick*, 2021-Ohio-1119, ¶ 15 (2d Dist.). "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the [trial court's] . . . judgment." *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 21.

**{¶ 11}** Although the magistrate's decision at times characterized the Bank's first claim as one for breach of contract, the complaint makes clear that it was a claim on an account. "An action on an account is founded upon contract, and is appropriate where the parties have conducted a series of transactions for which a balance remains to be

- 4 -

paid." *Capital One, N.A. v. Howard*, 2024-Ohio-275, ¶ 9 (2d Dist.). The action exists to avoid the multitude of suits that would be necessary if each transaction between the parties were construed as constituting a separate cause of action. *Id.*

{¶ 12} To properly plead and prove an action on an account, the plaintiff must demonstrate the existence of an account that is in the name of the party charged and that contains (1) a beginning balance (zero, or a sum that can qualify as an account stated, or some other provable sum); (2) listed items, or an item, dated and identifiable by number or otherwise, representing charges, or debits, and credits; and (3) summarization by means of a running or developing balance, or an arrangement of beginning balance and items which permits the calculation of the amount claimed to be due. *CACH, L.L.C. v. Donohue*, 2017-Ohio-5672, ¶ 14 (12th Dist.).

{¶ 13} "[A]n account rendered by one person to another and not objected to by the latter within a reasonable time becomes an account stated." *Hamilton Farm Bureau Coop., Inc. v. Ridgway Hatcheries Inc.*, 2004-Ohio-809, ¶ 13 (3d Dist.); *Barclays American/Commercial, Inc. v. ROYP Marketing Group, Inc.*, 61 Ohio App.3d 701, 708 (10th Dist. 1988). "It is the duty of the person to whom the account is rendered to examine the account within a reasonable time and make objections if there is a dispute as to the correctness of the account." *Hamilton Farm Bureau* at ¶ 13. "An account stated is an agreed balance of accounts expressed or implied, after admission of certain sums due or an adjustment of the accounts between the parties." *Barclays* at 708.

{¶ 14} We find that the trial court did not err in concluding that appellant had a contract with the Bank. At trial, through its records custodian's testimony and Exhibits 1 thru 4, the Bank demonstrated that an account existed between appellant and the Bank. Ritter, the records custodian, authenticated the copy of the credit card account application in appellant's name (Exhibit 1), and indicated that in response thereto, the Bank issued

the credit card to appellant. Ritter also identified monthly billing statements bearing appellant's name and mailed to appellant at her residence address (Exhibit 3). These monthly statements showed appellant's use of the credit card and the activity on the account between July 2019 and March 2023. The final statement with a due date of April 16, 2023, showed an outstanding balance of $26,877.83. By using the credit card, appellant became bound by the terms and conditions set forth in the account cardholder agreement (Exhibit 2).

{¶ 15} Although the credit card account electronic application does not bear appellant's signature in that it was unsigned, Ohio courts have recognized that credit card agreements are contracts whereby the issuance and use of a credit card creates a legally binding agreement between the issuer and the user of a credit card. *CACH*, 2017-Ohio-5672 at ¶ 13; *Capital One*, 2024-Ohio-275 at ¶ 12. "A creditor does not need to produce a signed credit card application to prove the existence of a binding contract because the credit card agreement created one." *Capital One* at ¶ 12; *Citibank v. Hyslop*, 2014-Ohio-844, ¶ 11 (10th Dist.). Therefore, the Bank's issuance of the credit card and appellant's use of the card create a binding contract. *CACH* at ¶ 13. The Bank's evidence regarding the account cardholder agreement, along with the account statements showing appellant's use of the issued card, is sufficient to demonstrate a prima facie case of appellant's liability for the amounts owing on the card. *Calvary SPVI, L.L.C. v. Furtado*, 2005-Ohio-6884, ¶ 18 (10th Dist.).

{¶ 16} In support of her argument that the evidence was unequivocal she had no part in Perdue's fraudulent opening and use of the account, appellant cites *Natl. City Bank, Norwalk v. Stang*, 84 Ohio App.3d 764 (6th Dist. 1992). In *Stang*, a wife procured a joint bank loan by forging her husband's signature on the promissory note. The wife deposited the loan proceeds into the parties' joint checking account and used the

proceeds to pay debts she had incurred, including the bank loan. When the bank loan went into default, the bank sued the husband and wife. The complaint against the husband alleged an unjust enrichment claim. After a trial, the trial court granted judgment in favor of the bank and against the husband for the unpaid balance of the loan. On appeal, the court of appeals observed that the husband was "an innocent party" based upon the unequivocal evidence that the wife was in charge of household finances, that the husband had no part in the bank fraud, and that he only became aware of the bank loan until after the fact. *Id.* at 767. The court of appeals found that in light of the fact a great share of the loan proceeds was used by the wife to pay her own debts for which the husband was not personally liable, the judgment against the husband for the entire amount of the loan was against the manifest weight of the evidence. *Id.* at 768.

{¶ 17} The case at bar is unlike *Stang*. As stated above, the credit card account was opened in appellant's name, the credit card was issued in appellant's name, and the account cardholder agreement and monthly statements were mailed to appellant's residence address in her name. The monthly statements admitted into evidence reflect charges that were for appellant's benefit. Specifically, the November-December 2019 statement (only 4-5 months after the account was opened) reflects a charge for Allegiant Airline tickets for appellant and what appears to be related cruise tickets and hotel reservations. The August-September 2021 statement reflects a charge for attorney fees to appellant's counsel's former law firm. The October-November 2021 statement reflects a charge for Allegiant Airline tickets in appellant's name and related lodging accommodations. Furthermore, another charge made to the account was an access check in appellant's name that was used to pay Synchrony Bank. The record shows that payments on these and other charges were made during the life of the account.

{¶ 18} Ritter's testimony indicates that appellant did not assert a fraud or identify

theft claim until after the account was closed. Appellant testified that she learned about the account during the 2022 divorce proceedings when the Bank started calling and sending certified letters, that she started calling the Bank to report the fraud, that she first contacted the Bank before October 6, 2022, and that she made the $685 payment to prevent the account from being referred for collection. That payment was made on September 8, 2022.

{¶ 19} Appellant asserts that the divorce decree supports her testimony that Perdue opened and used the account without her knowledge or authorization. However, that Perdue was allocated responsibility for the credit card in the divorce, while resolving responsibility for the debt between appellant and Perdue, has no bearing on appellant's liability to the Bank. Moreover, appellant conceded at trial that the divorce decree does not state, nor does Perdue admit in the divorce decree, that he opened the account fraudulently.

{¶ 20} The trial court did not find credible appellant's testimony that the account was fraudulently opened and used by Perdue without her knowledge or authorization. We are guided by the presumption that the trial court was best able to view Ritter and appellant and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Gresham,* 2022-Ohio-2328 at ¶ 12. For this reason, we defer to the trial court's factual findings regarding the credibility of the witnesses, and we may not substitute our judgment for that of the trier of fact. *Id. See also Am. Express Natl. Bank v. Bush*, 2020-Ohio-4424, ¶ 20 (11th Dist.).

{¶ 21} In light of the foregoing, the trial court did not abuse its discretion by overruling appellant's objections to the magistrate's decision and adopting that decision as its own, thereby awarding a $26,877.83 judgment in favor of the Bank and against appellant. The evidence supports the trial court's findings that a contract exists between

appellant and the Bank. The assignment of error is overruled.

**{¶ 22}** Judgment affirmed.

HENDRICKSON , P.J., and SIEBERT, J., concur.